## CARLE *vs.* UNDERHILL.

*In the matter of proving the last Will and Testament of*
ADONIJAH J. UNDERHILL, *deceased.*

WHEN, on the probate of a will, an alleged codicil is brought in by parties interested, but not cited. the proper course is to direct an allegation propounding the paper for proof, as part of the pending proceeding.

A paper expressing a wish to give certain sums, and that neither " executors nor heirs will object to carrying out this my will," is testamentary in its character; and, having been properly executed, was admitted to probate.

When the testator, in the presence of the subscribing witnesses, dictates the provisions of a testamentary paper, reads it aloud after it is drawn, signs it, and requests them to give it their attestation, the substance of what the statute requires, is performed. In such a case, there is a sufficient testamentary declaration; that is, the testator manifestly makes public and open the nature of the act.

Whether a paper is a will or not in its character, does not depend upon the maker declaring it to be a will, but upon its contents.

If the testator showed and declared by his acts and his language, that he designed to make provisions contingent on his death; if this was clearly communicated, and clearly understood by him and by the witnesses, through the medium of his own language in dictating the instrument, and by his reading it aloud, and if the paper itself on its face is testamentary, the statute as to a testamentary declaration is answered.

If the act be testamentary in its character, it is not necessary to its validity that the testator shall clearly and fully understand its legal effect, the manner in which it would operate, and its provisions be carried out.

W. C. WETMORE, *for Executors.*

HENRY P. McGOWAN, *for Carle and Wife.*

This case lies within a very narrow compass. The paper is testamentary upon its face, for it professes to dispose of certain property of the decedent in case of his death, and desires his executors to carry such disposition into effect. The reference to executors implies, that there is a pre-existing testament not intended to be revoked or superseded by this paper, and to which this paper is supplementary. In a word, the paper upon its face purports to be a codicil to the decedent's last will and testament. It does not, indeed, give itself a name, but that is not material. In nothing are name and form less regarded than in testamentary papers.

No point is made by those opposing probate, except the perpetually recurring criticism, that the decedent did not in so many words declare the paper to be his will.

This objection was never before made upon so slender a foundation. The testator himself read the whole instrument aloud at the time of execution in the presence and hearing of two of the witnesses.

The object of the statute in requiring a declaration distinct from the mere act of signing or acknowledging the signature, is to avoid any fraud or mistake as to the paper which the testator intended to execute. Surely this object is most completely and perfectly met and answered by a public reading of the whole paper by the testator himself in the presence of the witnesses. A more complete and perfect shield against any kind of error could not be devised by the wit of man. It is probably the very measure to this end which legislative wisdom would have prescribed, were it not that few persons when making their wills are willing that the intended dispositions should be published.

As a mere technical question, the form adopted is equally

satisfactory. A literal compliance with the precise words of the statute is universally admitted not to be necessary. The statute is deemed to be satisfied if in any way the testator signify to the witnesses that he knows what the paper is, and if the communication should be of such a nature as to convey to them information of the fact that it is his last will and testament, or a codicil thereto.

Reading over aloud in their presence a paper which purports to be a codicil to his last will and testament, necessarily conveys all this information.

All wills and codicils are void, unless in writing. If this paper is capable of being pronounced either a will or a codicil under any proof, it must be because it purports on its face to be a codicil to the testator's last will.

The Court cannot ascertain and declare that it possesses that character, except from *its* written contents. If these written contents can declare to the Court that it is such codicil, an oral publication of those contents by the testator to the witnesses, must necessarily have amounted to a declaration by him to them that it was such codicil.

There is in fact but one question in the case. Is the paper on its face a testamentary paper? If it be, every form prescribed was observed, not only to the letter, but over and above and beyond the letter.

It seems idle to cite authorities in such a case, but those which most directly touch the points in this case, and show that the reading of the paper is a most satisfactory declaration of it, are: *Remsen* vs. *Brinckerhoff*, 8 *Paige*, 491, *S. C.* 26 *Wend.*, 332; *Doe* vs. *Roe*, 2 *Barbour's S. C. R.*, 204, 205; *Whitbeck* vs. *Patterson*, 10 *Barbour*, 610, 611; *Ruddon* vs. *McDonald*, 1 *Bradf.*, 352; *Seymour* vs. *Van Wyck*, 2 *Selden*, 123; *Lewis* vs. *Lewis*, 1 *Kernan*, 226.

THE SURROGATE.—On the probate of the will, a paper alleged to be a codicil, was brought in by certain parties, interested, but not cited, and I directed them to file an allegation propounding it for proof. This having been done, the

question now arises on the depositions of the witnesses, whether the instrument was executed in conformity to the statute regulating the method of making wills. On the ninth of February, 1854, the testator made his last will and testament, containing various provisions, and appointing executors. On the 25th of June, he signed the following paper, which had been written at his request:—

" It is my wish to give John Carle, jr., all my stock in the Galena and Chicago Rail Road, old and new.

"New York, 6 *mo.*, 25, 1854."

" It is also my wish to give my dear cousin, Susan H. Carle, three Hudson River Rail Road Bonds, one thousand dollars each; also five hundred dollars in cash to buy a set of silver; and I hereby hope and desire that neither my executors nor heirs will object to carrying out this my will, they being my true friends.

"New York, 6 *mo.*, 25, 1854.
" A. J. Underhill.

" Witnesses. { Anna Suydam,
              Phebe Suydam,
              Mahlon Buckman.

" After paying Ann and Phebe Suydam's bills, give each of them a good silk dress, to be selected by Susan H. Carle."

There can be no doubt that this instrument is testamentary in its character. It does not purport to make a present gift; but, on the contrary, looks to death, in its reference to " executors" and " heirs" not objecting to carry out its provisions. The word " will" is the term which the testator himself applies to it. The testator signed it in the presence of two subscribing witnesses, and requested them to attest it, which they did. No question is raised, except as to the sufficiency of the testamentary declaration. Though the testator was sick at the time, his capacity is not controverted, nor is there

any doubt that this instrument expresses his deliberate intention and wish. The two witnesses who saw him affix his signature, agree in saying they were present in the room when the testator requested Mr. Carle to get paper, pen and ink. He brought paper and a pencil, and the testator said: " Not pencil, but pen and ink—that pencil would not stand law." On these being brought, he dictated the provisions. Mr. Carle wrote them, brought the paper to the testator, who, according to the evidence of one of the witnesses, read it aloud, signed it, acknowledged it to be his act, and requested the witnesses to attest. It appears also that Mr. Carle read the paper aloud to the first two subscribing witnesses, after it had received the testator's signature, and Phebe Suydam says this was in the testator's presence. Mr. Buckman, a third witness, was afterwards called up stairs by the testator's request: he went to his bedside, and the testator having the paper in his hand said, " I acknowledge this to be my act, to take effect if I should not recover, and I wish you to witness it." He also says that he read the paper aloud in an adjoining room, eight or ten feet from the testator, and thinks the testator could have heard him. These circumstances, in my judgment, evince a sufficient testamentary declaration. When the testator, in the presence of the subscribing witnesses, dictates the provisions of the instrument, reads it aloud after it is drawn, signs it, and requests them to give it their attestation, the substance of what the statute requires is performed: that is, he manifests, makes public and open the nature of the act. If this document had been drawn in the usual form of wills, there would probably have been no difference of opinion on that point. It has been suggested that the act looks more like a *donatio causa mortis*, but there was no attempt to consummate a gift by present delivery, nor was the testator willing to leave to parol proof the evidence of his intentions in favor of these beneficiaries. He may not, perhaps, have been aware of the full legal effect of the act, but that he designed it to have a legal effect is quite clear from his statement that it should be

written with ink and not pencil, in order "to stand law." Even supposing his mind was not clear how the instrument would operate or in what precise way effect would be given to its provisions; still, if he showed and declared by his acts and his language that he designed to make provisions contingent on his decease; if this was clearly communicated, and plainly understood by him and by the witnesses, through the medium of his own language in dictating the instrument, and by his reading it aloud, and if the paper itself on its face is testamentary, then when we have the substance of a testamentary declaration, why should we look further for the form? Whether a paper is a will or not in its character, does not depend upon the maker declaring it to be a will at the time he executes it. Its validity under the statute depends upon that, but the nature of the instrument depends upon its contents. The object of the statute was, not to have the probate court aided in determining the nature of the paper, by the testator's parol declaration, but to have the character of the act exhibited at the time and made known by the testator to the witnesses. This object is satisfactorily accomplished by his reading aloud to them the document in question. The form of the instrument is immaterial, if its substance be testamentary. Thus deeds have been admitted to proof, (*Thorold* vs. *Thorold*, 1 *Phill.*, 1), if intended to operate only after death, the Court looking to the substance of the provisions, and to the intention expressed in them by the writer, and not to the name or the absence of a name characterizing them. In reading this paper aloud, then, the testator declared to the witnesses that he was making gifts to take effect after his death, which he was not executing himself by delivery, but which he called upon his executors to execute. The document being testamentary in substance, I think such a declaration by reading sufficient to satisfy the demands of the statute—and it must therefore be admitted to probate as a codicil to his last will and testament.