[No. 9681.  In Bank. — December 31, 1886.]

# JULIA K. DUFF ET AL., RESPONDENTS, *v.* ROBERT P. DUFF ET AL., APPELLANTS.

APPEAL — INTERLOCUTORY DECREE IN ACTION TO ENFORCE TRUST. — In an action brought to have the defendants adjudged trustees for the plaintiffs of certain real property, and for an accounting of the rents and profits thereof, an interlocutory judgment establishing the trust and directing an accounting is not appealable.

ID. — NEW TRIAL — BILL OF EXCEPTIONS — FINDINGS — SPECIAL VERDICT. — In such an action, certain special issues were submitted to a jury, who found thereon adversely to the defendants.   The latter thereupon moved to set aside the verdict on the grounds of insufficiency of the evidence to justify it, and of errors in the instructions.   No statement or bill of exceptions was made on this motion, which was denied by the court, on the ground that the verdict was merely advisory, and that the errors, if any, could be corrected when the case was finally submitted.   The court subsequently filed its findings, covering the principal issues in the case, upon which the interlocutory judgment establishing the trust and directing the accounting was entered, and thereafter filed additional findings covering the matters embraced in the account, upon which final judgment was entered.   No notice of the filing of the latter findings was served on the defendants.   On the eleventh day after the filing of the additional findings, the defendants moved for a new trial on a bill of exceptions, which was settled by the court.   *Held,* that the motion for a new trial could not properly have been made until after the findings on the matters embraced in the account had been filed, and that on such motion the defendants could be heard on their bill of exceptions as to that part of the trial which was had before the jury.

ID. — FAILURE TO GIVE NOTICE OF FILING FINDINGS. — *Held further,* that the motion for a new trial was made in time, as no notice of the filing of the additional findings was served on the defendants.

EVIDENCE — ADMISSION — PETITION FOR LETTERS OF ADMINISTRATION. — A petition for letters of administration is a pleading, and the rules in regard to admissions in pleadings apply to it.

ID. — PETITION WHEN ADMISSIBLE IN EVIDENCE. — A statement in a petition for letters of administration, to the effect that certain real property therein particularly described belonged to the deceased, cannot be received in evidence against the petitioner as an admission by him of such fact, unless the petition was signed by him personally, or by an attorney who acted within the scope of his authority in making the statement.

ID. — ATTORNEY TO DRAUGHT PETITION — AUTHORITY OF. — An attorney merely authorized to prepare a petition appropriate to the procurement of letters of administration has no authority to particularly describe the property belonging to the estate of the decedent; and a description of such property in the petition prepared by the attorney is not binding on the client as an admission.

ID. — ADMISSIONS IN ARBITRATION PROCEEDING. — Admissions made for the purpose of submitting to arbitration matters of difference between certain parties, in order to dispense with proof of the facts admitted, cannot be received in evidence in a collateral action between the same parties.

APPEAL — ERROR PRESUMPTIVE OF INJURY. — When an error against the appellant is shown, injury to him is presumed, and it devolves upon the respondent to show that no injury has in fact been done.

STATUTE OF LIMITATIONS — ACTION AFFECTING REAL PROPERTY — RELIEF ON THE GROUND OF FRAUD. — Conceding that subdivision 4 of section 338 of the Code of Civil Procedure, providing that actions for relief on the ground of fraud must be commenced within three years after the discovery of the fraud, does not apply to actions of that nature in relation to real property, then the limitations affecting such actions are to be determined by the rules of equity, which are substantially the same.

ATTORNEY IN FACT — SALE OF LAND — DUTY TO INFORM PRINCIPAL. — An attorney in fact to sell real estate is bound to inform his principal of all sales and conveyances that he has made of the property to which his agency extends.

PLEADING — FRAUD — LACHES AND DELAY. — The complaint *held* to show that the property in question had been fraudulently acquired by the defendants, and that the plaintiffs' right of action had not been lost by laches or delay.

EQUITY — JURISDICTION IN CASE OF FRAUD — ACTION OF EJECTMENT WHEN INADEQUATE. — A court of equity has jurisdiction of an action brought to set aside a deed alleged to have been fraudulently executed many years before the commencement of the action, and to charge the grantees therein as trustees of the land conveyed, notwithstanding the complaint alleges that the deed was executed without consideration. In such a case, the remedy by ejectment is not adequate.

ID. — FINDING AS TO OWNERSHIP — LEGAL TITLE HELD IN TRUST. — In such an action, where issues are raised as to whether the person alleged to have been defrauded was the owner of the land, or was a mere trustee holding the legal title for the benefit of certain third parties, who paid the purchase price therefor, a finding that he "was the owner of the legal title of the land," and "did not acquire the legal title in trust for other persons," is not sufficient.

ID. — FINDING AS TO NOTICE. — So where an issue is raised as to notice by him of the fraudulent deed, a finding that he had no actual knowledge or information thereof is not sufficient.

ID. — STATUTE OF LIMITATIONS. — On an issue raised as to the statute of limitations, the court should expressly find whether or not the action is barred by the statute, and not merely the facts from which it may be inferred.

APPEAL from a judgment of the Superior Court of Humboldt County, and from an order refusing a new trial.

*S. M. Buck, Horace L. Smith,* and *James Hanna,* for Appellants.

*Wilson & Wilson, L. D. McKisick, J. D. H. Chamberlin,* and *J. J. De Haven,* for Respondents.

THORNTON, J. — The plaintiffs are Julia Duff, the widow, and Agnes Duff, the infant daughter, of William R. Duff, deceased; the defendants are Robert P. Duff and Frank S. Duff, the brothers of the decedent above named.

The object of the action is to have defendants adjudged trustees for plaintiffs of the real property alleged to have been fraudulently conveyed to them by Richard Duff, their father, under powers of attorney executed to him by William R. Duff; that the defendants be decreed to reconvey the said real property to the plaintiffs, and that they account to them for the rents and profits received by them from the property aforesaid; and that a receiver be appointed to take charge of said property, and collect the rents, etc., during the pendency of this action.

Issue being joined by the several answers of the defendants, certain special questions or issues — fourteen in number — were framed and submitted to a jury, who, on the 22d of September, responded to the same by a verdict. On the 14th of November, 1881, the defendants moved the court to set aside so much of the verdict as answers the issues numbered 1, 10, 11, and 13, on the ground, — 1. That the court erred in giving the instructions to the jury as requested by plaintiffs; 2. In refusing to instruct as requested by defendants; 3. Insufficiency of the evidence to justify the verdict. Under this last ground several particulars are specified in which the evidence was so insufficient. The record states that " the above motion is made upon the papers in the case, the documentary evidence introduced on the trial of said issues, and all evidence introduced on

said trial as shown by the minutes of the court." No statement or bill of exceptions was made on this motion. The court, on the 30th of July, 1882, denied the motion. In denying the motion, an opinion was filed in which the learned judge said that it was conceded that the verdict or findings of a jury in a case of the kind before the court are merely advisory, and may be adopted in full, or modified, or wholly rejected by the court; that if the court had mistaken the law and misdirected the jury in the instructions given, or erred in refusing instructions asked, all such errors can be corrected when the case is finally submitted, and no injury can result to either party; that though the case was tried half a dozen times, it would still be in the power of and the duty of the court " to reject, modify, or approve any or all the findings of the jury, and adopt such findings only as might be justified by the evidence."

The opinion proceeds as follows:—

"As far as I am now informed, I am satisfied that I will have to reject some of the findings, and perhaps modify others. My understanding is, that other issues and further evidence are yet to be submitted to the court before the final submission of the cause for decision. I prefer withholding a definite and ultimate decision upon the matters involved in this motion until all the evidence is in and the trial concluded. I see no impropriety in the practice, more particularly as the argument and briefs of counsel on the motion seem to me to cover substantially the whole ground of the controversy.

" Reserving the right hereafter to adopt such findings as are sustained by the evidence, to reject those which are not, and to modify others if necessary, I shall deny the motion."

On the 23d of February, 1883, the court filed a series of findings covering the most important issues in the cause. An interlocutory judgment followed, which was

filed on the 24th of July, 1883. By this decree it was adjudged that certain trusts in said property existed in favor of plaintiffs, and defendants were directed to account to them for rents and profits, etc., and a referee was appointed to ascertain certain matters and report to the court, and take and state the account above referred to. It appears that the referee never acted, and that the inquiry was made, and the account was afterward taken and stated by the court. Additional findings were made by the court, covering the matters of which an account was to be taken. These findings were filed on the 31st of January, 1884.

The final judgment herein was filed on the first day of February, 1884, and on the eleventh day of the same month a notice of intention to move for a new trial was on behalf of defendants served and filed. The notice stated that the motion would be made on a bill of exceptions to be settled and filed, and on the following grounds:—

" 1. Insufficiency of the evidence to justify the findings of the jury upon the issues of fact submitted.

" 2. Insufficiency of the evidence to justify the findings of facts and decision of the court.

" 3. That the findings of fact and decision of the court are against law and evidence.

" 4. Error in law occurring at the trial, and excepted to by the defendants."

Both parties appeared before the judge on the settlement of the bill, which was certified and allowed on the eighteenth day of April, 1884. On the 10th of May, 1884, defendants' motion for a new trial was denied, and the fifth day of July following the defendants appealed from the interlocutory judgment, from the final judgment, and from the order denying their motion for a new trial.

What can be heard by this court on these three appeals?

No appeal lies from an interlocutory judgment except

in an action for the partition of real property. (Code Civ. Proc., sec. 939, subd. 3.) The appeal from the interlocutory judgment may therefore be disregarded.

There is no appeal from the order of the 30th of July, 1882, denying defendants' motion to set aside the verdict of the jury as to certain of the special issues above stated. It is urged on behalf of respondents that this motion was for a new trial, opportunely made, and its denial was appealable, and that on such appeal the insufficiency of the evidence to justify the findings of the jury and the errors of law properly reserved might have been considered; but no appeal having been taken from the order of the 30th of July, 1882, which it is contended denied defendant's motion for a new trial, and no bill of exceptions or statement settled on such motion, the defendants cannot now be heard on their bill of exceptions as to that part of the trial which was had before the jury. Is this contention maintainable?

In *Hinds* v. *Gage*, 56 Cal. 486, which was an action to dissolve a partnership, for an accounting between the partners, for the payment of the partnership debts, and to set aside certain alleged fraudulent judgments and sales, the court below, on the 20th of June, 1878, filed its findings of fact, and on the 27th of the same month a decree was entered setting aside the judgments and sales, dissolving the partnership, directing the property to be sold by a receiver who had been theretofore appointed, and ordering a reference to a referee to take an account between the partners and to ascertain the indebtedness of the firm to third parties and between themselves. It was also ordered that the referee report the result of the accounting, and that upon the coming in of the report and its approval, the proceeds of the partnership property be applied as stated in the decree. On the 5th of July, 1878, defendants gave notice of their intention to move for a new trial, which motion was denied March 5, 1879. The report of the referee was filed October 18,

1878, and after hearing the objections of the defendants thereto it was confirmed.

The court held that as the notice of motion for a new trial was given before the report of the referee was filed, it was therefore premature, and that the appeal from the order denying such new trial should be dismissed.

The court relied on and followed *Crowther* v. *Rowland-son,* 27 Cal. 376, in which it was held that it was the intention of the legislature that the proceedings in new trials should be postponed until cases had been tried, and that the trial of the case was not complete until the final report of the referee was filed.

The case of *Hinds* v. *Gage, supra,* has never been overruled.

In the case before us, the referee did not act, and the account was taken, and stated by the court. The findings on this branch of the case were filed on the 31st of January, 1884. If the trial in the case of *Hinds* v. *Gage* did not end until the report of the referee was filed, by a parity of reasoning the trial in this case did not end until the filing of the findings of the court on the day first above mentioned. The notice of new trial was served and filed on the 11th of February following, and though this was on the eleventh day after such filing, still as it does not appear that any notice of the filing of these findings was ever served on the defendants, from which service the ten days in which they had to be given notice of such motion is to be computed, we must hold the notice given in time.

The appellants then on their appeal from the order of the tenth day of May, 1884, denying a new trial, within the reason of the rule laid down in *Hinds* v. *Gage,* have a right to be heard on the matters stated in their bill of exceptions.

Another view may be taken in relation to this matter, which would accord to the defendants the right to be heard as above stated. The case should be regarded as

having been tried by the court, and the findings as incomplete until findings latest in date were filed. The defendants then have a right to be heard on giving notice of their motion for a new trial within ten days after receiving notice of the filing of the findings. As above said, they have received no notice of the filing, and therefore their motion was in time.

We think that it is eminently just that the defendants should be here heard on their bill of exceptions. The court in denying the motion to set aside the findings above mentioned seemed to be of opinion that the defendants would lose nothing by defining their notice as they did. This is apparent from the opinion of the court above stated. It is evident from his remarks that the learned judge did not regard the case as finally submitted, and the motion seems to have been denied without considering the merits of it, on the ground that it would be better to make it after the final decision,—a course of procedure from which he said "no injury could result to either party." Though this course of procedure taken at the suggestion of the judge would not warrant us in establishing a practice not sustained by the code, still, as we find the course proper, we advert to it to show that if the defendants are not heard here in regard to the questions arising on their bill of exceptions, injustice would be done them. In fact, their motion for a new trial was not heard on the merits at all in the lower court until after the second set of findings was filed. When the bill of exceptions was settled, no objection was made to it as containing matters not proper to be inserted in it at that stage of the case, and the motion proceeded and was determined as if it was in all respects regularly made.

The parties appear to have acted on the intimation of the court. On the 23d of February, 1883, the court, after having been advised by the verdict, filed the first set of findings. And on the 5th of March, 1883, the

parties consented in writing that defendants should have twenty days from March 1, 1883, to prepare and serve a bill of exceptions, and file and serve a notice of motion for new trial. On the same day, and in pursuance of this consent, an order of court was accordingly entered. This consent was continued in writing, and by order, to a day subsequent to the settlement of the bill of exceptions. Under these circumstances, it would be most unfair now to hold that the bill of exceptions should not be considered in its entirety.

In the course of the trial, several exceptions were reserved by defendants to the rulings of the court upon the admissibility of evidence offered on behalf of plaintiffs, which we proceed to consider.

The plaintiffs offered in evidence a petition signed " F. S. Duff, by S. M. Buck, his atty.," for letters of administration on the estate of Richard Duff, deceased. The petition was filed in December, 1877, and described by metes and bounds, or by reference to lots in certain blocks in the city of Eureka, giving the numbers of the lots and blocks, certain parcels of land as belonging to the estate of Richard Duff, deceased, and stated that certain of the parcels described as belonging to the estate were held by Robert P. Duff. Some parcels of this property described as held by Robert P. Duff were really claimed by and had been conveyed to Frank P. Duff. These parcels or some of them are portions of the property involved here.

When this paper was offered there was no proof that F. S. Duff (who is the defendant Frank S. Duff) ever signed it or knew of its contents, or in fact ever heard of it.

At no time has the statute ever required that the real property belonging or claimed to belong to the estate of a decedent should be described in the petition for letters of administration. It is only required that the value and character of the property, " when known to the ap-

plicant," should be stated. As the petition must state
the facts essential to give jurisdiction of the case, it may
in some cases be necessary to state that the deceased left
property in the county in which the application is made.
(Code Civ. Proc., sec. 1294.) But the statute never
required any further statement regarding the property
than that above pointed out.

The paper in question was not offered to prove the
fact that an application to procure letters of administra-
tion on the estate of the decedent was made by defend-
ant Frank, but as an admission by Frank that certain
statements made in it that certain parcels of the land
individually claimed by him were not his property, but
belonged to the estate of Richard Duff, deceased.

This petition is a pleading, and the rules in regard to
admissions in pleadings apply to it. (*Foster* v. *Wilber*, 1
Paige, 540; *Van Vleck* v. *Burroughs*, 6 Barb. 344; *Carle*
v. *Underhill*, 3 Bradf. 101; Code Civ. Proc., secs. 420,
1371.) Conceding that it contained the admissions of
facts which would be evidence against a party who had
knowingly made them, are they evidence against him
under the circumstances above mentioned?

In 2 Wharton on Evidence, sec. 838, it is said "that
the pleadings of a party in one suit may be used in evi-
dence against him in another suit, not as estoppel, but
as proof, open to rebuttal and explanation that he admit-
ted certain facts. But in order to bring such admission
home to him, the pleading must either be signed by him,
or it must appear that it was within the scope of the
attorney's authority to admit such facts." The learned
author cites the following cases. (*Parsons* v. *Copeland*, 33
Me. 370; S. C., 54 Am. Dec. 628; *Green* v. *Bedell*, 48 N. H.
546; *Currier* v. *Silloway*, 1 Allen, 19; *Gordon* v. *Parmelee*,
2 Allen, 212; *Bliss* v. *Nichols*, 12 Allen, 443; *Brown* v.
*Jewett*, 120 Mass. 215; *Cook* v. *Barr*, 44 N. Y. 156; *Tabb*
v. *Cabell*, 17 Gratt. 160; *Hammat* v. *Russ*, 16 Me. 171;

*Ayers* v. *Hartford etc. Ins. Co.*, 17 Iowa, 176; *Meade* v. *Black*, 22 Wis. 241; *Hobson* v. *Ogden*, 16 Kan. 388.)

In *Cook* v. *Barr*, 44 N. Y. 156, the Commission of Appeals, speaking by Earl, C., said: "When a party to a civil action has made admissions of facts material to the issue in the action, it is always competent for the adverse party to give them in evidence; and it matters not whether the admissions were in writing or by parol, nor when nor to whom they were made. Admissions do not furnish conclusive evidence of the facts admitted, unless they were made under such circumstances as to constitute an estoppel, or were made in the pleadings in an action, when they are conclusive in that action. They may be contained in a letter addressed to the opposite party, or to a third person, and in either case are entitled to equal weight and credit. They are received in evidence because of the great probability that a party would not admit or state anything against himself or his own interest unless it were true. And I am unable to see why the rule does not apply to admissions contained in the pleadings in an action under our system of practice, which requires the facts to be alleged truly in the pleadings. It must first be shown, however, by the signature of the party, or otherwise, that the facts were inserted with his knowledge, or under his direction, and with his sanction."

In *Boileau* v. *Rutlin*, 2 Exch. 664, a question arose on the admissibility of a bill in chancery as evidence of the admission by the complainant of the truth of the facts stated therein, and it was held inadmissible for any such purpose, but only for the purpose of showing that a suit was instituted and the subject-matter of it. This case was decided in 1848, and Judge Curtis, in *Church* v. *Shelton*, 2 Curt. 275, states that it was held as above after a very careful examination of all the previous authorities, both in England and Ireland. The same learned judge further says of this ruling: "I consider

this decision to be in conformity with the weight of authority in this country"; and cites *Adams* v. *McMillan*, 7 Port. 73; *Durden* v. *Cleveland*, 4 Ala. 225; and *Isaac's Lessee* v. *Clark*, 2 Gill, 1.

In *Church* v. *Shelton, supra,* the question arose as to the admissibility of a libel as evidence of a confession by the party filing it of the particular facts stated in it. The learned judge held it inadmissible as a confession, but admissible on another ground and for another purpose. The purpose for which it was admitted in the case cited does not exist in the case before us.

In the cases excluding bills in chancery, they seem to have been considered as the mere suggestions of counsel, for which the parties on whose behalf they were filed should not be held responsible.

In *Boileau* v. *Rutlin, supra,* it seems that the privity of the party complainant appeared, still the bill was held inadmissible as an admission of the facts stated in it.

In *Marianski* v. *Cairns,* 1 Macq. 212, the defendant offered in evidence a pleading (answer) of plaintiff in a suit brought against him by his wife for alimony, as an admission of his poverty. Its admissibility was sustained by the house of lords, on the ground that it was signed by the plaintiff. As to this, Lord Truro said:—

"The document in question stands on a footing quite different from that of pleadings in general, for it is signed by the party himself; and I recollect to have asked (though I do not remember that I received an answer) whether it was upon oath or not. Assuming, however, that it was not upon oath, still it was a representation made by the individual himself, under his hand, as to the state of his own circumstances. By that document he described himself as living upon eight shillings a week. And one of the points in this case being whether Marianski had the means to make the advances which he claimed to be due to him, the document was tendered to show his position and resources

at a period shortly antecedent to that at which the advances were alleged to have been made by him.

"Now, it certainly appears to me that this document is not open to the objection which would apply to pleadings in ordinary; and I am of opinion that being a statement of his own circumstances, made by the individual and signed by him, the fact of its having been made in the course of another suit ought not to render it inadmissible as evidence in *this* suit."

In *McDermott* v. *Mitchell*, 47 Cal. 249, the joint answer of Root and Mitchell in the action of Brock *v.* Mitchell and Root, verified by Root, but not by Mitchell, was offered in evidence. It was held admissible as to Root, but not as to Mitchell. "As to the latter," the court said, "it was the mere work of the attorney, and not admissible as evidence against the client in another action."

In the cases above cited from Massachusetts, the pleadings were admitted on the ground that they were the statements of an agent (the attorney for the party) while employed and acting within the scope of his authority. (*Gordon* v. *Parmelee*, 2 Allen, 215.)

In this case it appears that the petition admitted was not signed by the petitioner, Frank S. Duff. His name was written at the end of the paper by his attorney. So far as appears, the authority of the attorney was to file a petition appropriate to the procurement of an order of court for letters of administration. This authority would not extend beyond the insertion of such allegations as the law required such application should contain. As is clear from the section of the statute above cited, a description of the property of the decedent's estate was not required, but only the value and character of such property. The character of the property would sufficiently appear by a statement in the petition that it was realty or personalty. The attorney was only authorized to file a petition stating the character

and value of the property. In going beyond this, he was not acting within the scope of his authority, and therefore the statements in the petition describing the property were not on that ground admissible.

Evidence in relation to the preparation and filing of this paper was put in at a subsequent stage of the trial. The evidence shows that Frank Duff and his brother, James, called to see the attorney who drew it (Mr. Buck) about the date of its filing. James Duff said to him that he claimed that a portion of the property held by Robert Duff belonged to the estate of his father, and desired to have some one appointed administrator, and a suit brought for the purpose of testing his right. After some conversation, Buck proposed to James Duff to file a petition, and asked him who should become the administrator. It seems not to have occurred to James that he could not very well be such, because he was not a resident of the state. Buck suggested Frank as a proper person, to which Frank reluctantly assented. Frank had nothing to say about the business. Buck then asked about the property, and James said that it was the property of Robert Duff, and distinctly stated in Frank's presence that he made no claim to the portion of it that belonged to Frank Duff. Buck then asked where he could get a description of the property, to which James replied that he did not know, unless from the records. Instead of sending to the recorder's office, Buck sent to the assessor's office, and told the person sent to copy the property assessed to Robert Duff. It turned out that some of Frank's property was assessed to Robert, and this portion of Frank's property so assessed was put by description in the petition. There is no evidence that Frank knew of this until a subsequent period, when a second petition for letters of administration was drawn up.

If the second petition which omitted all the property of Frank S. Duff and that claimed by Robert P. Duff was

filed as a substitute for the first, was not the first petition inadmissible within the rule declared in *Mecham v. McKay*, 37 Cal. 154, and followed in *Ponce v. McElvy*, 51 Cal. 223? As it does not appear that the second petition took the place of the first, the question does not arise here, and we do not determine it. It does not appear that any letters were granted or obtained on this petition.

As the petition was not signed by Frank Duff personally, and it does not appear that the facts were inserted with his knowledge or under his direction and with his sanction, we are of opinion, on the authorities above cited, that the court erred in admitting it as evidence. It is well settled that an error against the appellant being shown, injury to him is presumed, and that it devolves upon the respondent to show that no injury has, in fact, been done. (*Ponce v. McElvy*, 51 Cal. 223.) On an examination of the record, we are not satisfied that no injury was done to the defendants by admitting this paper in evidence.

The statements as to R. P. Duff's property in the petition offered are entirely irrelevant as to any issue proffered by Frank Duff, and are not admissible against Robert P. Duff. There is no such joinder of interest between Frank and Robert Duff as will make any admissions of Frank binding on Robert Duff. If not admissible against the former, they are not against the latter.

The statements are not admissible as declarations of a co-conspirator, as they do not appear to be in furtherance of any common design or made in the execution of such design. They were in no sense any part of the *res gestæ*.

The judgment roll in the case of William R. Duff *v.* James T. Ryan and James R. Duff was offered in evidence by plaintiffs. It was objected to by defendants as irrelevant. This objection was overruled, and defendants excepted.

The action of Duff *v.* Ryan was brought to recover a claim for $11,017.77, assigned by Richard Duff to the plaintiff in that action. Plaintiff recovered judgment on the 31st of August, 1885, for $11,572.39. It does not appear that anything was ever paid on the judgment to William R. Duff. We cannot see how this evidence was relevant to any issue in the case. If William R. had collected anything on it, it might be relevant as evidence that he had means, and was able to purchase the property in question here, but the judgment roll alone was irrelevant, and should have been ruled out. Such evidence might have misled the jury, and for that reason should not have been admitted.

While we might not reverse the judgment on account of the admission of this document on a subsequent trial, it should not be admitted without further evidence which would show its relevancy.

We cannot see on what ground the paper marked "copy of R. P. Duff's statement" was admissible. Conceding that it was sufficiently proved that it was a copy of an original paper signed by R. P. Duff, still the admissions, if any, contained in it (and it was offered to prove those admissions) were made for the purpose of submitting to arbitration some matters of difference between the heirs of Richard Duff and R. P. Duff, and were doubtless made for the purpose of dispensing with proofs of the facts admitted. An admission for that purpose cannot be offered in this action any more than an admission in one action, made for the purpose of dispensing with proof otherwise required, can be offered in another action, which is not allowed. The court acts on such admission on the trial of the action, to use the language of Mr. Greenleaf, " not as truth in the abstract, but as a *formula* for the solution of the particular problem before it, namely, the case in judgment, without injury to the general administration of justice." (1 Greenl. Ev., sec. 206.)

It is urged that section 338, subdivision 4, of the Code of Civil Procedure, does not apply to an action like this, which, though founded in fraud, is but an action to recover real property.

In support of this point, attention is called to the fact that the heading to the chapter of which the above section is a part is in these words: "The time of commencing actions other than for the recovery of real property," and that the first section (335) in the chapter is as follows: "The periods prescribed for the commencement of actions other than for the recovery of real property are as follows."

And it is further said that this is really an action to recover real property,—referring to *Oakland* v. *Carpentier*, 13 Cal. 552, where it was said of a like provision in section 17 of the then statute: "We think that this provision has no relation to an equitable proceeding to set aside a fraudulent deed of real estate when the effect of it is to restore the possession of the premises to the defrauded party. In such a case, the action is substantially an action for the recovery of real estate; indeed, it is literally."

Granting that this action is of the character above stated, the result would be that there is not and never has been any statute of limitations in this state in regard to actions for relief on the ground of fraud in relation to real property, and we would then be compelled to fall back on the rules of equity as a part of the common law governing actions for relief on the ground of fraud in the sale and purchase of real property. These rules are substantially the same as those which have been adopted and enforced in regard to the subdivision and section above mentioned. (See *Boyd* v. *Blankman*, 29 Cal. 46, 47; 2 Pomeroy's Eq. Jur., sec. 917, and cases cited in note 3.)

It may be remarked that the section and subdivision of the statute under consideration has in many cases

been applied to actions for relief on the ground of fraud in purchases of real property. (See *Boyd* v. *Blankman*, *supra; Moore* v. *Moore*, 56 Cal. 90; *People* v. *Blankenship*, 52 Cal. 619.)

In the case last cited this section and subdivision were held applicable to an action brought by the state to cancel a patent alleged to have been procured by fraud; but in the view above taken, it is immaterial whether the section and subdivision apply or not.

The complaint states facts sufficient to constitute a cause of action. Its allegations are substantially as follows: That in 1863 W. R. Duff was the owner of the property involved herein; that in August, 1863, he executed to Richard Duff a letter of attorney, by which he authorized Richard *inter alia* to sell and convey for the constituent the property referred to; that immediately after the execution of this letter, William R. Duff departed from this state and never returned to it; that subsequently, during a period extending from the fifth day of July, 1866, to the third day of April, 1872, Richard Duff, assuming to act for his principal under the letter, by deeds purporting to be executed under it, conveyed to defendant Robert P. Duff certain of the property aforesaid; that prior to the 7th of July, 1867, Richard, acting under the letter of attorney, by deeds purporting to be executed under it, conveyed to the defendant, Frank S. Duff, certain portions of the property aforesaid; that between the first day of November, 1867, and the 1st of January, 1880, Robert P. Duff conveyed to Frank certain of the parcels of the land in controversy; that between the sixth day of July, 1867, and the commencement of the action Frank conveyed to Robert certain parcels of the land in suit; that the deeds above mentioned executed by Richard to Robert and Frank were "without any consideration of any kind given or agreed to be given to William R. Duff, or any person, for the use and benefit of William "; and that the deeds executed

by Robert to Frank and by Frank to Robert were
without any valuable consideration, and neither of them
were purchasers for value, and that Robert and Frank,
when these last-mentioned lands were conveyed to them
respectively, had full knowledge of all the matters here-
inbefore alleged, and that the conveyances executed by
Richard as attorney were made with the intent and pur-
pose of defrauding William, and that they had been
accepted by Robert and Frank, acting in collusion with
the attorney, Richard, with the intent to defraud Wil-
liam; that during a period of seven years preceding the
commencement of this action, defendants had received
the rents and profits of the land to the amount of one
thousand dollars per annum; that William R. Duff died
intestate, leaving the plaintiffs surviving him, Julia K.
Duff, his widow, and Agnes, a minor, only child of the
said Julia and William; that William devised his prop-
erty to his wife, Julia, and Agnes, born after her father's
death, is entitled to share, because not mentioned in the
will.

The complaint further alleges the proper appointment
of William L. Duff as guardian *ad litem* of Agnes; that
Julia Duff had no knowledge or information of the afore-
mentioned conveyances, and the acts stated in relation
to them, and their fraudulent character, until an intima-
tion was made to her in a letter received by her from
Mrs. Louisa Wilson, sister of the defendants, on or about
the 20th of April, 1879, in consequence of which she was
led to make inquiry concerning the property owned by
William R. Duff in the county of Humboldt; that she
has made discovery of the aforementioned acts of Rich-
ard and the defendants since April, 1879.

We are of opinion that the complaint sets forth a case
of concealed fraud. It is averred that William was
ignorant of the conveyances during his whole life. Let
it be observed that there is no allegation that the deeds
were recorded. So conceding, as contended, that Wil-

liam was bound to look at the records of the county of Humboldt, it does not appear that they would have given him any information.

But a relation of trust and confidence existed here between Richard Duff and William. The former was the attorney of the latter; and under such circumstances, it is the duty of the attorney to keep his constituent informed of all sales and conveyances that he has made of the property to which his agency extends. "An agent must use ordinary diligence to keep his principal informed of his acts in the course of his agency." (Civ. Code, sec. 2220.) This has always been the rule governing the relation of principal and agent. It does not appear that anything had occurred to put William on inquiry.

It must also be observed that William was absent from the state while the transactions above referred to occurred, having left the state immediately after the execution of the letter of attorney, and remained absent during the remainder of his life. Under these circumstances, we think the averment that William was ignorant of the conveyances, and had no knowledge or information that the conveyances had been executed by his attorney is sufficient. (See *Buckner* v. *Calcote*, 28 Miss. 597, and cases there cited.) His wife and child were also absent, and we do not see why the same rule does not apply to them, though the agency terminated on the death of Richard. William lived about five months after Richard's death, but we do no see that his failure to come to California during this period, and look after his property, when he might have ascertained what had been done, puts him in fault. The averments show reasonable and proper diligence on the part of plaintiff, Julia K. Duff. The other plaintiff was an infant of tender years, and no negligence, under the circumstances appearing in the complaint, can be attributed to her.

But it may be urged that the grantees in the deeds executed by Richard Duff under the letter of attorney could act upon the presumption that Richard had kept William informed of all his acts and of his conveyances to the defendants. On this point, we are of opinion that, conceding the fraud and collusion attributed to the defendants by the allegations of the complaint (which must be conceded on this demurrer), they must stand on the fact as it is, that no such information was given to the principal by his agent and attorney. We think the complaint sufficient.

It is further urged that this is an action in equity, and a court of equity has no jurisdiction, because it appears that the remedy at law to recover possession by ejectment is complete and adequate, for the reason that the conveyances to the defendants under the letter of attorney, as they were made without consideration, were utterly void, and they constitute no defense to an action of ejectment, and we are referred, to sustain this contention, to *Dupont* v. *Wertheman,* 10 Cal. 354, and *Mott* v. *Smith,* 16 Cal. 533. In the case of *Dupont* v. *Wertheman,* where there was a recovery in ejectment, the above rule was declared. But the complaint sets forth a case of fraud, and of fraud according to the principle laid down in *People* v. *Houghtaling,* 7 Cal. 348, of which a court of equity had jurisdiction. In that case an action in equity was sustained for a specific fund of money declared to be a trust fund, though the action for money had and received could have been maintained for the money, and the recovery would have been the same in the latter action as in the former. We do not think we would be justified in holding that a court of equity would have no jurisdiction.

The jurisdiction in equity in matters of fraud is very broad, and although it has been held in various of the states that the jurisdiction in equity will not be exercised when the remedy at law is certain, complete, and

adequate, still the jurisdiction is not denied. Upon the facts alleged in the complaint, showing that there has been a great lapse of time since the conveyances assailed herein were executed, from which it might well be inferred that the statute of limitations would be invoked as a defense, we must hold the contention not maintainable.

For the errors above pointed out the case must go back for a new trial. As the issues of fact will have to be tried again, we refrain from saying anything on the point that they were not sustained by the evidence. But we think it proper to remark that the first finding is not as definite as it should be. It states that " upon August 4, 1863, William R. Duff was the owner of the legal title of the lands," etc. It should be found that he was the owner of the lands, and as facts are averred in the answer from which it would seem that the purchase of most, if not all, of the land in suit was made and the purchase-money paid by others, who caused the conveyance of the legal title to be made to William R. Duff, by which a resulting trust in favor of the parties paying the money was created, we think there should be a finding on the issue so made. The mere finding that William R. Duff did not acquire the legal title in trust for other persons is not sufficient.

The ninth finding is not sufficient. It states that William R. Duff in his lifetime had no *actual* knowledge or information of any deeds, etc. The finding should be that he had no knowledge or information of any kind on the subject, if the evidence establishes the fact that he had no knowledge or information of any circumstances to put him on inquiry as to the deeds, etc. As the finding now stands, there is an implication that circumstances were known to William R. which should have stimulated him to inquiry.

The thirteenth finding is a finding of evidence, not of the fact that the property mentioned in it was held

in trust as stated in it.   The finding should be that the property referred to in the letter was held. in trust in the manner and proportions mentioned in the letter.

If the court finds that the cause of action is not barred by the statute of limitations, it should so find, and not merely facts from which it may be inferred.   This court is not authorized to infer facts from facts found; that is the province of the trial court.   On the facts found, this court determines questions of law arising on them, not facts by inference from facts found.

We intend to say that *in addition to the facts found* on the issue joined in regard to the defense of the statute of limitations, the court below should have found whether the cause of action was barred by the statute, or not.

The judgment and order are reversed, and the cause remanded for a new trial.

So ordered.

Myrick, J., Sharpstein, J., McKinstry, J., and Mc-Kee, J., concurred.

Rehearing denied.