## ESTATE OF CORNELIUS KING, DECEASED.

[No. 15,068; decided March 8, 1896.]

**Letters of Administration.**—If the Executor Named in a Will is incompetent, or renounces, or fails to apply for letters, then letters of administration with the will annexed must be issued as provided in section 1365 of the Code of Civil Procedure.

**Executors—Renunciation of Right to Letters by Nominating Administrator.**—Where the executors named in a will request the appointment of another person as administrator, who is appointed and dies during administration, and the executors thereupon apply for letters, such application is based upon the circumstances then existing, and their previous failure to apply for letters does not affect their right to appointment under such altered circumstances.

**Executors—Right to Letters After Death of Administrator with Will Annexed.**—Where petitioners for letters are next of kin of the testator, and would be entitled if he had died intestate to share in the distribution of his estate, they are entitled to administer thereon in preference to the public administrator, without the testator's nomination of them as his executors; and their request for the appointment of another as administrator, who is appointed accordingly and dies during administration, does not deprive them of their right to letters after the death of such administrator.

Executors.—Where Executors Fail to Apply for Letters Testamentary, the court is authorized to appoint an administrator with the will annexed, without any request or renunciation by the executors. It does not follow, therefore, when the executors make a request, that the court, by appointing an administrator with the will annexed, treated such request as an absolute renunciation.

Executors—Renunciation by Nominating Administrator.—Two heirs and legatees of the decedent, who were also named in his will as executors, requested the appointment of a person designated by them as administrator with the will annexed; and, with the expressed intention that such person and no other should be appointed administrator, declined to act as executors.    Their nominee was accordingly appointed, but thereafter died.   Thereupon the executors petitioned for the issuance of letters testamentary to themselves; the public administrator petitioned for his own appointment as administrator with the will annexed, contending that the executors had renounced their right to letters.   It was held that the right of the executors to appointment was affected by their original request only to the extent of preventing them from being appointed as against their nominee, and that such request did not amount to an absolute renunciation.

Knight & Heggerty and Blake & Harrison, for the executors.

J. D. Sullivan and Herbert Choynski, for A. C. Freese, public administrator.

COFFEY, J.   Cornelius King, aged eighty-five years and upward, unmarried and childless, died on the twenty-fifth day of July, 1894, at Napa City, Napa county, California, in the asylum for the insane, to which institution he had been committed from the city and county of San Francisco, of which he was and had been for many years a resident, and in which he left an estate mainly in cash, money deposited in savings banks to the amount of upward of $200,000.   He left a will dated April 14, 1885, in possession of one J. B. Fargo, a copy of which will is here inserted.

The will of Cornelius King is as follows:

"I, Cornelius King, of the City and County of San Francisco, State of California, do make, publish, ordain and declare this to be my last will and testament.

"First.   I hereby revoke any and all wills by me heretofore made.

"Second. I direct my executors and executrix, hereinafter named, to expend the sum of ten thousand dollars in and about the expenses of my funeral and the erection of a monument over the place where my remains may be buried, and I hereby appropriate the sum of ten thousand dollars of my estate for that purpose.

"Third. I give and bequeath to the two children of Bridget, daughter of my deceased aunt, Mrs. Mary Cronin, of Petaluma, in this State, the sum of five hundred dollars each in gold coin.

"Fourth. I give, bequeath and devise all the residue of the estate, real, personal and mixed, of which I may die possessed, or to which I may be entitled at the time of my death, to my nephews, Cornelius, James and Daniel; and to my niece, Mary; the children of my deceased brother, Dennis King, formerly of Seneca Falls, in the County of Seneca, State of New York, and to the survivors and survivor of them in equal shares; provided, that if any of them shall have died before me, leaving children surviving them, such children shall take the share which their parent would have taken if living.

"Fifth. I nominate, constitute and appoint my said nephews and niece to be executors and executrix of this my will, and hereby direct that no bonds shall be required of them in that capacity.

"In witness whereof, I have hereunto subscribed my hand this fourteenth day of April, 1885.

"C. KING.

"The above foregoing written instrument was subscribed by the said Cornelius King in our presence, and acknowledged by him to each of us; and he at the same time published and declared the above instrument so subscribed to be his last will and testament; and we at his request, in his presence and in the presence of each other, have signed our names as witnesses thereto and written opposite to our names our respective places of residence, the 14th April, 1885.

"J. R. BRANDON,
    "2907 Washington St., S. Franco.
"C. V. GREY,
    "1304 Post St., San Francisco."

August 7, 1894, a petition was filed in this court by said J. B. Fargo, asking for the probate of this will, and for the issuance to him of letters of administration with the will annexed, in accordance with a request proceeding from the executors named therein. For the better illustration of the issues before the court the request signed and acknowledged by the said executors is here reproduced:

"Now come James King and Daniel King, nephews and heirs at law of Cornelius King, deceased, and named in the will of said deceased as executors of the will of said deceased, and represent and petition the court as follows:

"That said James King and Daniel King are now, and for many years past have been, residents of the city and county of San Francisco, state of California; and are nephews of said Cornelius King, deceased; and are named in the last will and testament of said deceased as his nephews and among his legatees; and are also nominated and named in said will, with Cornelius King and Mary Elizabeth Colbert, a nephew and niece of said deceased, as the executors of said will; that said nephew Cornelius King, and said niece Mary Elizabeth Colbert, were at the time of their death residents of the state of New York, and that they are now dead, and died some time prior to the death of said Cornelius King.

"That said James King and Daniel King do hereby request, ask and pray the said superior court and the judge thereof before whom the administration of the estate of said Cornelius King, deceased, shall come, to appoint J. B. Fargo, of San Francisco, California, to be the administrator with the will annexed of said Cornelius King, deceased; and they do hereby and herein nominate, select and request said J. B. Fargo to be appointed and act as such administrator of said estate; and for that purpose, and with the intention that said J. B. Fargo, *and no other person,* shall be appointed or act as such administrator, or administer said estate, the said James and Daniel King do hereby and herein decline to act as executors of said last will, and select and designate the said J. B. Fargo to act as administrator of said estate, and administer said estate, in their place and stead; and that he be appointed and letters of administration issue to him as such administrator."

August 22, 1894, the will was admitted to probate and J. B. Fargo was appointed and qualified as administrator with the will annexed, and so continued until January 5, 1896, when he died pending the uncompleted administration.

On January 7, 1896, two days after the death of said J. B. Fargo, the said James King and Daniel King, by themselves and through their attorneys, Knight & Heggerty and Blake & Harrison, filed a petition in which, after reciting the main facts already stated, say further that on the fifteenth day of October, A. D. 1895, the said J. B. Fargo filed in this court a sworn inventory of the estate of said deceased, showing the character and value thereof to be as follows: Money on deposit in savings banks in said city and county amounting to the sum of $214,371.60; and four promissory notes appraised as of no value; that said deceased died without issue and unmarried, and that he left neither father, nor mother, nor brother, nor sister, surviving him, and left surviving him as his only heirs at law your petitioners, both of whom are the children of Dennis King, a deceased brother of said testator; and that petitioners are both over the age of majority and bona fide residents of said city and county of San Francisco, and in all respects competent to administer said estate; that the legatees and devisees named in said will are petitioners and Cornelius King and Mary King; that said Mary King died before said testator and left no issue surviving her; that said Cornelius King, named in said will, also died before said estate, and left surviving him four children, namely: James King, Cornelius King, Mary King and Valentine King, all of whom are minors and reside at Seneca Falls, in the state of New York; that it is necessary that letters testamentary should now issue to petitioners in order that the administration of the said estate of said testator may be properly completed.

On January 10, 1896, A. C. Freese, public administrator, presented his petition setting forth the death and residence and value and character of the property in the estate of decedent, and that said decedent left a document purporting to be his last will and testament, and said document was duly admitted to probate herein as the last will of said decedent; that James King and Daniel King, named in said will as

executors thereof, declined to act as such and renounced the trust, and requested the appointment of J. B. Fargo as administrator with the will annexed of said estate; and thereafter, on the twenty-second day of August, 1894, letters of administration with the will annexed upon said estate were duly issued herein to said J. B. Fargo, and he continued to act as such administrator with the will annexed until the fifth day of January, 1896, and on said last-mentioned day said J. B. Fargo died at said city and county; that the administration of said estate of Cornelius King has not been completed, and it is necessary that an administrator with the will annexed be appointed herein to complete the administration thereof; that petitions have been filed herein to revoke the probate of said alleged will by Mary Machado, a half-sister of said Cornelius King, deceased; Florence Cary King, a half-brother of said Cornelius King, deceased, both residents of said state of California; Kate Sullivan, a half-sister of said deceased; and Florence Cary King, Jr., a nephew of said deceased; that James King and Daniel King, nephews of said. Cornelius King, reside in said state of California; that the above named are the only heirs of said deceased, Cornelius King, residing in said state of California; that said applications to revoke the probate of said will are now pending and undetermined. Wherefore, petitioner prays that letters of administration with the will annexed upon said estate be issued to him.

Upon these facts the question arises: To which of these applicants should the administration of this estate be intrusted?

The counsel for the public administrator insist that the executors have stated themselves out of court by their original request for the appointment of Fargo, and claim that this request was necessarily construed by the court to be a renunciation, otherwise the court would have had no power to make the appointment; and that the contention of the counsel for the executors that they reserved any right by the limitation of the request is untenable, because there is nothing in section 1350 of the Code of Civil Procedure, or in any other section of the probate statutes, that authorizes a qualified renunciation, and letters testamentary, or in lieu thereof

letters of administration with the will annexed, can only be issued once, and that is upon the proving of the will.

Counsel for the public administrator further contend that no authority can be cited where it is held that an executor may so qualify his renunciation as to reserve the right to letters testamentary in the event of the death of the administrator with the will annexed, and that section 1350, Code of Civil Procedure, has reference only to absolute and unqualified renunciation; and if in such renunciation the executor should so qualify his renunciation, the qualification would be void. They contend that the statute has not provided for any such qualified renunciation, but by section 1350, Code of Civil Procedure, it is provided: "If the sole executor or all the executors are incompetent, or renounce, or fail to apply for letters, or to appear and qualify, letters of administration with the will annexed must be issued as designated and provided in cases of intestacy." To sanction a qualified renunciation, as sought in this case, counsel for the public administrator argue, would be to destroy the effect entirely of the above section—to interpolate into said section a proviso that does not exist.

The averments of the petitions of James and Daniel King are, counsel for the public administrator claim, conclusive of their position in this matter.

The petition of Fargo recites: "That said James and Daniel King decline to act as executors, and in writing have requested and designated petitioner to be appointed administrator with the will annexed; and have joined in this petition for the probate of said will and appointment of petitioner as administrator.

"That said James and Daniel King, named in said will as executors thereof, decline to act as such, and request the appointment of petitioner as administrator."

The petition of Fargo further contains the following over the signatures of Daniel and James King: "We, James King and Daniel King, named in said will as executors, hereby join in the above petition and request the appointment of J. B. Fargo as administrator with the will annexed of Cornelius King, deceased."

The order admitting the will to probate and appointing Fargo administrator further shows: "James King and Daniel

King, nephews and heirs at law of said deceased, and who are named in the will of said deceased as the executors of the said will, have declined to serve or act as such executors, and have requested the appointment of said petitioner, J. B. Fargo, as administrator with the will annexed, and being personally present in court upon the said hearing and being by the court examined upon the hearing of said petition.''

The order is the order of the court, say counsel—the court's adjudication of two points of the present controversy—and the proof is offered on this hearing by James and Daniel King that they have both renounced their rights to be executors under the will, and also their rights to be administrators with the will annexed. ·

The counsel for the public administrator assert that the court has already adjudicated these things—and it is clear under section 1350, Code of Civil Procedure, that the first steps having been taken for the appointment of administrators, etc., and the will of Cornelius King, deceased, being left without executors to operate under it, recourse must next be had to the persons entitled to administration under section 1365, Code of Civil Procedure, to determine to whom letters of administration with the will annexed shall be issued. Who are so first entitled? James and Daniel King, nephews of deceased. But they have, counsel insist, under section 1379, Code of Civil Procedure, renounced their right to such letters and have requested the appointment of Fargo to be administrator with the will annexed; and, therefore, counsel claim they have waived and renounced all rights to administration of this state; and they are concluded by their own petitions and the order of the court thereupon made.

''The fair and legitimate interpretation of this provision is, that a judgment or order respecting the administration of the estate is conclusive upon the administration as to all matters directly involved in such judgment or order'': Howell v. Budd, 91 Cal. 349, 27 Pac. 747.

''The probate court had jurisdiction of the subject matter before it, viz., the resignation of the executors, and it had jurisdiction of the parties interested. Having such jurisdiction, all presumptions are in favor of the regularity of its

proceedings and the validity of its order, and the order accepting the resignation cannot be collaterally attacked'': Luco v. Commercial Bank, 70 Cal. 339, 11 Pac. 650.

"It must be presumed, in favor of the action of the court, that all the conditions existed which were necessary to authorize the appointment": Jennings v. Le Breton, 80 Cal. 9, 21 Pac. 1127.

"A petition for letters of administration is a pleading, and the rules in regard to admissions in pleadings apply to it": Duff v. Duff, 71 Cal. 513, 12 Pac. 570.

How, then, ask counsel for the public administrator, can these nephews assert in the face of their own petitions, in the face of their own proof and the judgment of the court, that they did not renounce their rights as executors of the will and also their rights to letters of administration?

The court having once adjudicated that the conditions precedent to the issuance of letters of administration with the will annexed existed, under section 1350, Code of Civil Procedure, and having thereupon issued letters of administration to the nominee of the nephews—it is strenuously insisted —they must be held to have renounced all and every of their rights to administration upon this estate for all time.

"Where one who is entitled to administer upon an estate waives his right to be appointed, or refuses to make application for letters of administration when requested to do so, the probate court may appoint anyone else who is entitled to letters, and after it has done so, it would not be error to refuse to revoke the grant of letters or the application of him who had waived his right or refused to make application in the first instance": Estate of Keane, 56 Cal. 409.

The nephews in this case, it is argued by the counsel for the public administrator, have both waived their rights, and, by requesting the appointment of Fargo, "refused to apply for letters themselves," and therefore they are not entitled to consideration on this present contest for letters; and the decisions referred to in the executors' brief, it is said by the same counsel, carry out the same reasoning that "a written request by one entitled to letters of administration upon an estate, for the appointment of a nominee, is a waiver and relinquishment of his right to administration."

"If he fails to make application within proper time, letters of administration with the will annexed must be issued to some other person": In re Brown, 80 Cal. 384, 22 Pac. 233.

"The meaning of these sections is that, at the time of admitting the will to probate, the court must appoint as executor the person who is named therein as such, if he has petitioned therefor, and is not incompetent": Estate of Bauquier, 88 Cal. 308, 26 Pac. 178, 532.

While pending before the court for its decision, and after the submission of the case for decision, the petitioners for letters testamentary filed in this court another petition for letters of administration with the will annexed, thereby attempting to make a drag-net out of the law. It is submitted by the public administrator that this last petition cannot be maintained while the other proceeding is pending, for the reason that when a person elects to pursue one remedy he cannot pursue at the same time another remedy in respect to the same subject matter. This is illustrated by the familiar rule that a person may in many cases waive a tort and sue on contract, and, once having elected, he is confined to that remedy; and, for another reason, that there is another proceeding between the same parties with respect to the same subject matter: Code Civ. Proc., sec. 1713.

Recurring to the merits of the petition for letters testamentary, counsel for the public administrator submit that in view of section 1350 the court has no jurisdiction to issue letters testamentary. The only jurisdiction the court has, these counsel assert, is to issue letters of administration with the will annexed as provided in section 1350, Code of Civil Procedure, and they say that the statements in the petition show that the court has no jurisdiction to entertain the petition for letters testamentary, and that then the only application that can be entertained is that of the public administrator for letters of administration with the will annexed.

Section 1350 of the Code of Civil Procedure provides that if all the executors renounce, or fail to apply for letters, or to appear and qualify, letters of administration must be issued as in cases of intestacy.

It is argued by counsel for the public administrator, upon this, that because the court did in this case issue letters of

administration as in a case of intestacy, therefore it must have found that all the executors either renounced or failed to apply for letters, or failed to appear and qualify.

It is true that all the executors did for the time being fail to apply for letters, or to appear and qualify, but they did not renounce. They requested the appointment of Mr. Fargo, but their own right beyond this was not affected by that act, and this request was not a renunciation of their right. If Mr. Fargo had declined to act, or if the court had for any reason denied his application or refused to appoint him, the executors would have still retained their right to letters and could then have asserted it; and the fact that the court acted upon this request of theirs and appointed Mr. Fargo gives it no stronger a character as a renunciation.

It is true that they did fail to apply for letters for the time being. If they had not so failed the court could not, of course, have appointed the administrator, but the court has already acted upon this failure as directed by section 1350, Code of Civil Procedure, and letters of administration have been issued as in a case of intestacy. This failure now, however, no longer appears.

The executors are here asserting their right, and insisting upon it, and the court's direction is now found in section 1349, Code of Civil Procedure, and it must issue letters to the persons named in the will as executors who are competent to discharge the trust, who must appear and qualify, unless objection is made as provided in section 1351, Code of Civil Procedure, and the only objection provided for by that section is such as can be made by some person interested in the will, and no such person appears objecting.

In what has been said section 1301 is not overlooked, wherein it is provided that a failure for thirty days to petition for letters may be held to amount to a renunciation unless good cause for delay is shown; but the cause for the delay here sufficiently appears, and even if no such cause appeared, there would be no occasion for the court to exercise the discretion given by this section against the executors, for the delay has resulted in no injury to the persons interested under the will, or to the heirs of the testator.

This court in the Estate of Bedell, 3 Cof. Pro. Dec. 78, affirmed by the supreme court in 97 Cal. 339, 32 Pac. 323, holds that a person entitled to letters, who has nominated another, "cannot revive his privilege nor retract his waiver and request as against the petitioner." This, and all the cases holding the similar rule, follow the Estate of Kirtlan, 16 Cal. 161-165, in which the court says: "We do not see that the brother might not have waived this right of administration, as well as any other right, in favor of a competent person; and having done so, and encouraged the petition to go to expense and trouble in applying for this office, why he is not, on familiar principles, estopped now from withdrawing his assent and waiver, or renunciation."

In other words, the rule to be deduced from the authorities is that the nomination of another as administrator simply estops the party making the nomination from afterward asserting his right to the prejudice of his own nominee.

The fact that such nomination and waiver goes no further than this seems to be recognized in Estate of Moore, 68 Cal. 281, 9 Pac. 164. In that case the widow nominated another person to be administrator, and he was accordingly appointed. He was afterward adjudged insane and committed to the asylum. Later, and after his restoration to capacity, the widow applied to have letters of administration issued to herself upon the theory that the insanity had created a vacancy. The court held that the insanity of the administrator did not ipso facto cause a vacancy in the office without an order vacating his letters, and upon that ground alone the application of the widow was denied; and it does not appear to have occurred to the court or any of the counsel in that case to make the claim that the widow's right died with her nomination; on the contrary, the supreme court say that if the widow had applied for letters during the incapacity of her nominee, she would doubtless have received them.

The executors petitioning here are next of kin of the testator, and would be entitled if he had died intestate to share in the distribution of his estate; and as such next of kin are entitled in preference to the public administrator, without the testator's nomination of them as his executors.

Counsel for the public administrator argue that there is no authority for the limited declination made by the executors here, and that, therefore, it must be treated as an absolute renunciation, because without a renunciation the court had no authority to appoint Fargo. No renunciation is necessary. If no writing whatever had been signed by the executors, but they had merely failed to appear and qualify, the court, under section 1350, Code of Civil Procedure, could, as it did, appoint an administrator with the will annexed, and this failure to appear and qualify now no longer existing, it is the court's duty, under section 1349, Code of Civil Procedure, to issue letters to the executors.

The petitioners, James King and Daniel King, are entitled to letters testamentary, and the application of the public administrator should be denied.

Let an order be entered accordingly.