[No. 11343.  In Bank. — May 1, 1889.]

## A. W. RANDALL, RESPONDENT, v. JULIA K. DUFF ET AL., APPELLANTS.

AGENT — UNAUTHORIZED CONVEYANCE BY. — If an agent to sell real property undertakes to convey it without consideration, no title passes by his conveyance. It is a mere nullity. (*Dupont* v. *Wertheman*, 10 Cal. 368, approved and followed.)

ID. — MORTGAGE BY SUCH A GRANTEE TO INNOCENT PERSONS. — If the grantee of the agent mortgages the property to innocent persons, the mortgages are valid liens for the loans which they were given to secure; but such mortgages do not pass the legal title, which remains in the principal.

ID. — FORECLOSURE OF SUCH MORTGAGES — PRINCIPAL A NECESSARY PARTY. — In foreclosing such mortgages, the principal is a necessary party, and if he is not made a party, the decree does not cut off his rights.

ID. — SALE UNDER SUCH A DECREE — RIGHTS OF PURCHASERS THEREAT. — If the property is sold under such a decree of foreclosure to purchasers

with notice of the facts, they take no title. But if they are without notice, they are protected by the rule as to *bona fide* purchasers, as much as if they had purchased directly from the party in whom the title appeared to be on the records. This is by virtue of the fact that they were such purchasers at the time of the foreclosure sale. Their want of notice at the time they took their mortgages is not sufficient.

ID. — EFFECT OF NOTICE OF LIS PENDENS IN PRIOR SUIT. — If before the foreclosure sale the principal commenced a suit to assert his rights, and filed a notice of *lis pendens*, such notice charged the purchasers at the foreclosure sale with notice of the matters litigated in said suit; and therefore they are not innocent purchasers.

ID. — STATUTE OF LIMITATIONS.— In such case, inasmuch as the purchasers under the foreclosure sale acquire nothing, the question of the statute of limitations does not arise. It is not as if they took a title, and the beneficial owner was attempting to set up a secret trust.

APPEAL from a judgment of the Superior Court of Humboldt County, and from an order denying a new trial.

The facts are stated in the opinion of the court, and in the opinion of Mr. Commissioner Hayne.

*Samuel M. Wilson, Wilson & Wilson,* and *J. D. H. Chamberlain,* for Appellants.

*E. W. McKinstry, Horace L. Smith,* and *S. M. Buck,* for Respondent.

BEATTY, C. J.— A rehearing was granted in this case after a decision by the court in Bank reversing the judgment and order of the superior court.

The opinion of Mr. Commissioner Hayne, upon which our decision was based, is reported at the end of this opinion.

With the exception that it does not show distinctly the fact that the action of *Duff* v. *Duff* was commenced and notice thereof filed prior to the *commencement* of either of the foreclosure suits under which respondent is a purchaser, that opinion contains a full and accurate statement of the facts out of which the controversy arises, and we refer to it for a statement of the case presented by the record before us.

For the purpose of such further discussion of the propositions advanced in the petition for and argument upon the rehearing, as we deem necessary, the matter may be simplified by stating the case in its *essential* form, that is to say, divested of the complicated and confusing details arising out of changes of interest among the parties to the transaction and their successors, the different parcels of land, mortgages, etc.

So stated, the case is this: William Duff gives his father a power of attorney to sell and convey his land, which is recorded. His father fraudulently and without any consideration conveys the land by deed, reciting a valuable consideration to Robert Duff. Robert records his deed, and thereupon mortgages the land to Ritchie to secure money advanced by him in good faith, under the belief that the title is, as it appears to be, in Robert. William Duff thereupon commences an action against Robert to have him declared a trustee and to compel a reconveyance, and at the same time files notice of *lis pendens*. After the commencement of this action, and after notice of *lis pendens* filed, Ritchie commences his action to foreclose his mortgage, making Robert alone a party, and entirely ignoring William, the real owner of the estate mortgaged. Decree of foreclosure follows, and sale and conveyance of the mortgaged premises to Randall, who (the action of William against Robert still pending) commences this action against William to quiet his title. William, by cross-bill, sets up all the facts, as here stated, and prays affirmative relief.

The question is, whether, upon findings showing this state of facts, Randall is entitled to a decree cutting off the right of William Duff to redeem the land.

We held in our former opinion, and we still think, after the fullest consideration of the arguments advanced on the rehearing, that such decree was erroneous. In substance, our decision was, that, as between William and Robert Duff, the title to the land remained in William,

but that as to Ritchie, the innocent mortgagee, he acquired, by estoppel, and not otherwise, a valid lien upon William Duff's estate in the land, and thereby became entitled to the same protection as if the land had been in fact, as it was in appearance, the property of Robert Duff.

But we held that the suit of William against Robert to establish and enforce the trust, and the filing of notice of *lis pendens* therein, before foreclosure by Ritchie, entitled William Duff to be made a party to the foreclosure suit, and that his right to redeem could not otherwise be barred.

Upon rehearing, counsel for respondent very earnestly combated these propositions, contending that they are not only contrary to law, but to natural justice and equity; that they work a grave hardship and injustice to the respondent here, and establish a rule which will seriously impair the value of mortgage securities.

We think that no part of this contention is sustained.

Nothing that we have said implies that a *bona fide mortgagee* is not as fully entitled as a *bona fide purchaser* to the protection of the principle upon which our recording acts are based, but we do not think anything is gained to the argument by calling a *mortgagee* a *purchaser*. Admitting that he is a purchaser, he is a purchaser *pro tanto* only. What he bargains for and pays for he gets, and that is a lien merely,—a right to subject the mortgaged premises to sale in order that he may be paid his debt out of the proceeds. But this right he has upon condition that he shall proceed by action to foreclose against all parties having an interest in the mortgaged estate subject to the lien whose right of redemption he wishes to cut off.

No one thinks of denying that a subsequent grantee or encumbrancer of the mortgaged premises whose conveyance is recorded must be made a party to the foreclosure suit in order to bar his right of redemption. Nor

does any one at this day assail the justice or the expediency of the law which secures to him the opportunity of contesting the validity and extent of the prior lien, and of having his right established in the surplus proceeds of the sale.

But the mortgagee is in just as full a sense a purchaser as to subsequent grantees and encumbrancers as he is with respect to a person having a prior undisclosed interest in the estate mortgaged; and it would be just as fair to argue that it is unjust to require a *bona fide* mortgagee to make a subsequent purchaser by recorded conveyance a party defendant to his foreclosure suit as it is to say that it is unjust to compel him, after notice of the true state of the title, to make a party of the real owner of the estate upon which he has secured a lien by estoppel, merely because such owner has for a time, without any fault or intended wrong, allowed the property to stand in the name of the fraudulent mortgagor.

There is no greater hardship, no heavier burden, cast upon the mortgagee in one case than in the other. And how it can be claimed that the security of the mortgagee is impaired in one case, and not in the other, by giving the known owner of the mortgaged estate an opportunity to be heard in the action, and to redeem from the sale, or to receive the surplus of the proceeds, is something that we have utterly failed to comprehend. On the other hand, we can see very clearly how the grossest injustice may be done in many cases, and must be done in this case, if the law were as respondent contends it is.

Suppose a case by way of example: A has an estate worth ten thousand dollars; he borrows of B one thousand dollars, and, to secure the debt, gives B a conveyance in form absolute, receiving back a separate defeasance; B records his deed, A fails to record his defeasance, B thereupon borrows five thousand dollars from C, who *bona fide* receives and records a mortgage of the estate. A subsequently records his defeasance,

and gives C actual notice of the true nature of the transaction between him and B before the debt to C becomes due.

Upon the reasoning of counsel for respondent, such notice to C, actual and constructive, does A no manner of good. C is a *bona fide purchaser;* he has got a lien on A's estate, but A has no right to be made a defendant in foreclosure, no right to redeem, no right to the surplus proceeds of the sale, or, what is the same thing, no means of enforcing such right. B, of course, has no interest in questioning the amount of C's claim or the extent of his lien, no interest in redeeming from sale an estate which confessedly he must yield up to A; and if he receives any surplus from the sale, A has no means of enforcing a claim to it.

Certainly such a result is neither equitable nor reasonable, but, on the contrary, is absurd and gratuitously unjust. No principle of equity, no consideration of public policy, sanctions such a result, and if it be the best that the courts of California can attain in view of the positive provisions of the codes, it must be admitted to be a serious reproach upon our legislation.

Happily, in our opinion, our laws are subject to no such imputation.

By section 2903 of the Civil Code it is provided that "every person having an interest in property subject to a lien has a right to redeem it from the lien at any time after the claim is due, and before his right of redemption is foreclosed."

By section 379 of the Code of Civil Procedure it is provided that "any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the question involved therein."

Now, can it be denied that in the case before us William Duff, or in the case supposed A, has an interest in

the property (and in the identical title and estate) subject to the lien? And if not, how can it be denied that he has a right to redeem up to the time such right is foreclosed? And how can it be foreclosed except by an action to which he is a party?

It seems clear to us that in these provisions of the codes the "innocent mortgagee" is plainly told that the true owner of the estate subject to his mortgage may be made a party to his action to foreclose, and that, in order to bar his right to redeem, he must be made a party.

Of course, the literal effect of these provisions is, to some extent, limited and controlled by other sections of the codes, and by other legal principles.

By a clause of section 726 of the Code of Civil Procedure the claims of subsequent grantees, etc., may be disregarded if they fail to record their conveyances, but this exception does not apply to William Duff, because he is not of the class defined. He does not hold any conveyance under the mortgagor; it is his estate that is mortgaged by the fraud of another. If this were the only exception to the rule preserving to all parties interested in the estate mortgaged a right to redeem until the right is foreclosed, it would seem to follow that the right of William Duff to redeem his estate would have been kept alive, notwithstanding a foreclosure by Ritchie without notice, actual or constructive, of his right.

But there is another exception to the rule, or rather the rule is subject to the operation of the principle of estoppel; and if Ritchie had foreclosed, without notice of William Duff's interest in the mortgaged estate, the foreclosure would have cut off his right of redemption for precisely the same reason that the mortgage subjected his estate to a lien, — for the reason, that is to say, that no man can be allowed to mislead another to his injury.

But Ritchie did have notice of William Duff's rights before he commenced his action to foreclose. The ac-

.tion of *Duff* v. *Duff* had been commenced and notice of *lis pendens* filed. This was constructive and sufficient notice to Ritchie and to the respondent of his rights in the property affected. (Code Civ. Proc., sec. 409.) Ritchie was an encumbrancer and Randall was a subsequent purchaser of the estate or property affected; and Ritchie in commencing his action to foreclose was taking a step toward the purchase of the estate then remaining in William Duff, and he was, therefore, bound to make him a party if he desired to cut off his right of redemption.

After all that has been said here, and in the opinion of Commissioner Hayne, it seems almost superfluous to refer explicitly to the point urged by respondent originally and upon the rehearing: that William Duff could not be a party to Ritchie's suit to foreclose, because he claims the mortgaged estate by a title paramount and hostile to the title of the mortgagor.

The doctrine upon which this objection is based is stated in Jones on Mortgages, section 1440, and it applies, as will be seen, only where the title of the defendant is paramount to the claim of both mortgagor and mortgagee. Here the title of William Duff, although in a certain sense paramount and adverse to that of Robert Duff, the nominal mortgagor, is not paramount to the claim of the mortgagee, but, on the contrary, is clearly subject to the lien of the mortgage. Instead of having no interest in the suit (which is the only reason the holder of an adverse title is held to be not a proper party to an action to foreclose), he is as directly and vitally interested as if he, himself, had with his own hand, and in his own name, executed the mortgage to Ritchie; for, as the case is, it is just as true as it would have been in the case supposed that it is his estate and title that is mortgaged.

In closing, we call attention again to the fact that for convenience and brevity we have omitted mentioning some of the actual parties to the transactions herein re-

ferred to, and that what we have said of William Duff is to be understood as applying to his successors, the plaintiffs in *Duff* v. *Duff*, and the appellants here; and that what is said of Ritchie applies also to Fiebig, the other mortgagee.

We adhere to the conclusion reached in our former opinion, and upon the grounds therein, and here stated, it is ordered that the judgment and order appealed from be reversed, and the cause remanded.

SHARPSTEIN, J., PATERSON, J., and WORKS, J., concurred.

The following is the opinion of Commissioner Hayne above referred to, rendered in Bank on the 23d of October, 1888:—

HAYNE, C.—Suit to quiet title to three tracts of land. The defendants set up title in themselves, and filed a cross-complaint for affirmative relief.

A preliminary objection is taken to the proceedings on motion for new trial, upon the ground that the record does not show that a notice of intention was given, and the case of *Dominguez* v. *Mascotti*, 74 Cal. 269, is relied upon. We think, however, that it sufficiently appears from the record that a notice of intention was given. The order denying the motion, which is a part of the record (Code Civ. Proc., sec. 952), recites that the motion was made "upon the grounds set forth in defendant's notice of motion." This sufficiently shows that a notice was given. It is not necessary that the notice should be formally set out. The fact that it was given may be inferred from a recital in the statement or bill of exceptions (*Frost* v. *Meetz*, 52 Cal. 670), or from a stipulation (*Godchaux* v. *Mulford*, 26 Cal. 320), or, as in this case, from the order disposing of the motion. (*Girdner* v. *Beswick*, 69 Cal. 115, 116.) In the case of *Bank of Healdsburg* v. *Hitchcock*, 76 Cal. 489, the fact that a notice

had been given was inferred from a statement in the order denying the motion that "a motion for a new trial is not the proper remedy." It is true that the recital here only goes to the fact that a notice was given, without showing its contents, or that it was given in time. But it will be presumed that the grounds stated in the bill of exceptions correspond (as they should) with the grounds stated in the notice. And it has been several times held that where it appears that a notice was given, it will be presumed to have been in time, unless the record shows the contrary. (*Rousrin* v. *Stewart*, 33 Cal. 210; *Burnett* v. *Stearns*, 33 Cal. 472; *Girdner* v. *Beswick*, 69 Cal. 115, 116.) The case of *Dominguez* v. *Mascotti*, therefore, has no application; and the preliminary objection is not well taken.

Upon the merits, the facts shown by the record are as follows:—

In 1863, one William R. Duff, who was then the owner of the property in controversy, departed from the state, leaving a power of attorney to his father, Richard Duff. William R. Duff remained away until his death, which occurred in April, 1875. During his lifetime, his father, assuming to act as his agent, executed conveyances of the property to one Robert P. Duff, the brother of William R. These conveyances purported to be for valuable consideration, but "were in fact made without any consideration given or agreed to be given." The grantee mortgaged one of the pieces of the property to one William Ritchie for five hundred dollars, and the others to one Charles Fiebig for fifteen hundred dollars. Neither of these mortgagees had, at the time they took their mortgages, any notice of the rights of William R. Duff or of his successors in interest. Each of the mortgages was foreclosed after the death of William R. Duff; but his successors in interest were not parties to either of the suits. The piece covered by the Ritchie mortgage was sold directly to the plaintiff, who in due course

received the sheriff's deed.    The other pieces were bought in by the mortgagee, Fiebig, who, after receiving the sheriff's deed, conveyed to the plaintiff.

William R. Duff never knew of the conveyance to his brother Robert; and his wife and child (defendants here) first learned of it, and of the fact that it was without consideration, in December, 1880.    In February, 1881, they brought a suit against Robert P. Duff and one Frank S. Duff, but not against the plaintiff here, " to have the title acquired by Robert P. Duff . . . . declared to be void, and that defendants in that action held the property in trust"; and at the same time filed a notice of *lis pendens*.    This notice was filed before the mortgages were foreclosed.    Judgment in said action was rendered for plaintiffs, but this judgment was reversed on appeal, and the case was remanded for a new trial. (See *Duff* v. *Duff*, 71 Cal. 513.)    Said action was pending at the time of the trial herein.    Judgment in the case before us was given for the plaintiff, and the defendants appeal.    We think the judgment appealed from was erroneous.

1. The power of attorney was to *sell* and convey the property.    It did not authorize the agent to give the property away, or to commit a fraud upon the principal by executing a conveyance which purported to be for valuable consideration, but which was in fact without any consideration " given or agreed to be given."    The grantee must necessarily have known that he did not give or agree to give any consideration for the deed, and consequently that the agent had no authority to make it. The conveyance being one which the agent had no power to make was a nullity.    (*Dupont* v. *Wertheman*, 10 Cal. 368.)    And such being the case, the legal title remained in the principal, William R. Duff.

The case of *Duff* v. *Duff* (71 Cal. 513) is not inconsistent with the foregoing.    In that case it seems to have been argued that a court of equity had no jurisdiction

because no title passed under the agent's deed. The
court, however, said that there was fraud, and that that
was sufficient to give the jurisdiction. (See p. 533.) But
we see nothing in the opinion to the effect that the title
passed to Robert P. Duff, although the suit seems to have
been framed on that theory. We do not see how it can
be held that the title passed under the agent's deed with-
out overruling *Dupont* v. *Wertheman,* which we think
was rightly decided.

2. But although the legal title remained in William
R. Duff, the apparent title was in Robert P. Duff, and
Ritchie and Fiebig; having lent their money to him and
taken their mortgages without notice of the facts, were,
so far as their securities were concerned, purchasers
without notice for a valuable consideration. But pur-
chasers of what? Not of the legal title. For under our
system a mortgage does not convey the legal title. They
simply took liens upon the property to secure the sums
lent by them. Their mortgages conferred upon them
the right, by proper proceedings, to have the legal title
sold to satisfy their claims. But to that end it was neces-
sary to bring suits of foreclosure against the parties who
had the legal title. The person who executed the mort-
gages had no title, either legal or equitable. No title,
therefore, could be got through a suit against him alone.
It is too plain for discussion that, at any time before the
foreclosure suits, the real owners had the right to redeem
their property from the encumbrances to which it was
subjected by the fraud of the agent of their predecessor
in interest. And they could not be deprived of this
right by suits to which they were not parties. The rule
that adverse titles cannot properly be litigated in fore-
closure has no application. The fallacy which we think
runs all through the argument of the learned counsel for
the respondent is in assuming that Robert P. Duff ever
had any title. But, as we have stated, the conveyance

to him was in excess of the powers of the agent, and was, therefore, a mere nullity.

If Robert P. Duff had *conveyed* the property to a purchaser for value without notice, and such purchaser had mortgaged it, the result would probably have been different. It might then have been claimed that the whole title passed to such purchaser by estoppel, and that he was the only party necessary to be made a defendant in the foreclosure suits. But inasmuch as the mortgagees took their mortgages directly from Robert P. Duff, who never had any title either at the date of the mortgages or otherwise, it was necessary to bring the persons who had the title before the court, which was not done. Hence the foreclosure proceedings did not *ex proprio vigore* cut off the rights of the successors in interest of William R. Duff.

3. But the apparent title being in Robert P. Duff, a defendant in the foreclosure suits, we think that a purchaser at the sheriff's sales for value and without notice would take as good a title as if he had purchased directly from Robert P. Duff, and taken a deed from him. (See 2 Pomeroy's Eq. Jur., sec. 774.) And inasmuch as there is no dispute that the purchasers at such sales gave value for their deeds, the question is reduced to this, Did they have notice of the rights of the defendants at the time they purchased?

In this regard, the findings show the power of attorney in full, the fact that the deed from the agent to Robert P. Duff was without consideration, and that the foreclosure suits were against Robert P. Duff and one Frank S. Duff,—not against the defendants here. The findings, therefore, show that the legal title did not pass to the purchasers at the foreclosure sales, unless they were without notice. It is necessary, therefore, that the want of notice should appear from the findings. (Compare *Landers* v. *Bolton*, 26 Cal. 394.) If they do not show this affirmatively, they do not support the judgment, and this,

independent of the question as to the burden of proof at the trial. But the findings do not show that the purchasers were without notice at the time of the foreclosure sales. What they do show is, that the mortgagees had no notice *at the time they took their mortgages,* which is quite a different thing. This defect in the findings is not cured by any admission of the parties, as supposed by the counsel for the respondent. There was nothing in the nature of an agreed statement of facts made part of the judgment roll by stipulation. (See cases cited in section 249 of Hayne on New Trial and Appeal.) The admissions were of mere matters of evidence at the trial. The cases cited by the learned counsel have no application, being in reference to admissions in the pleadings. The findings, therefore, do not support the judgment. This is sufficient to require a reversal. But since the question of notice will arise upon a retrial, and has been argued, we have examined the evidence in regard to it.

The evidence shows that the suit of *Duff* v. *Duff* was commenced before either of the decrees in foreclosure was rendered. The purpose of that suit was "to have the title acquired by Robert P. Duff and Frank S. Duff under the power of attorney mentioned in defendant's cross-complaint in this action declared void." The plaintiff, Randall, who was the purchaser at the Ritchie sale, had actual knowledge of this suit. It does not appear that Fiebig, who bought in the property at the sale under his mortgage, and afterward conveyed to Randall, had any such actual knowledge. But a notice of *lis pendens* was filed on the day the suit was commenced. And this gave both Randall and Fiebig constructive notice of the pendency of the suit. Now, as has been stated, the mortgagees could not claim to be purchasers of anything but a lien up to the time of the foreclosure proceedings; and those proceedings did not cut off the rights of the defendants here, because they were not parties to said suits; so that whatever rights Fiebig and Randall

got must arise from their having been innocent pur-
chasers at the foreclosure sales of the apparent title of
Robert P. Duff. They therefore claim through him.
This being the case, and the suit to declare the invalidity
of his supposed title having been pending at the time
they purchased, and they being charged with notice
thereof, how can it be contended that they took the
property free from the claims litigated in that suit so as
to be entitled to have their title quieted as against such
claims ?

We understand it to be elementary law, that a person
who acquires the claim of a defendant in a pending suit
of which he has notice takes subject to the rights of the
plaintiff in such suit. The maxim is, *Pendente lite nihil
innovetur*. And while our statute has made some change
as to what constitutes notice, it makes none as to the
effect of the notice when given. It results that the pur-
chasers at the foreclosure sales are subject to the rights
of the plaintiff in the suit of *Duff* v. *Duff*.

We cannot know from the record before us what the
final outcome of that suit will be. Therefore we are not
called upon to say what the rights of the parties will be
in case the defendants in *Duff* v. *Duff* shall finally pre-
vail. In other words, the question whether the notice
with which the purchasers at the foreclosure sales were
charged would cease to operate upon a defeat from any
cause of the plaintiffs in that suit, or would extend be-
yond it and affect the present case, notwithstanding
such defeat, is a question which does not arise upon the
record on this appeal.

4. It is argued for the respondent, however, that the
rights of the defendants here are barred by limitation,
because they discovered the fraud upon their predecessor
in interest more than three years before the filing of
their cross-complaint. But if we assume in favor of the
respondent that this point arises upon the record, we do
not think the point well taken. The fallacy of the

argument is in assuming that any title passed to Robert P. Duff. The learned counsel assume that he took the title, and that the defendants here are driven to fasten a secret trust upon it. But, as we have pointed out, no title passed to Robert P. Duff. And whatever rights the respondent has must depend upon whether he and Fiebig were purchasers without notice at the sheriff's sales. If they cannot establish this, their claim to the property fails. If they do establish it, they take a perfect title, irrespective of any period of limitation. For this purpose, therefore, it is immaterial when the cross-complaint was filed, or whether one was filed at all.

The questions as to what affirmative relief the defendants are entitled to, and what should be required of them as a condition thereof, are not necessary to be considered at present.

We therefore advise that the judgment and order appealed from be reversed, and the cause remanded for a new trial.

BELCHER, C. C., and FOOTE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order appealed from are reversed, and the cause remanded for a new trial.

McFARLAND, J., dissented.