[Sac. No. 1693.   Department Two.—September 21, 1910.]

## JAMES BEN ALCORN et al., Appellants, v. E. GIESEKE, Respondent.

POWER OF ATTORNEY TO SELL LAND—CONVEYANCE IN COMPROMISE OF LITIGATION.—A power of attorney to "sell" lands imports a sale for a pecuniary consideration, and does not authorize a conveyance in consideration of the compromise of litigation. Such a conveyance is void.

ESTATE OF DECEASED PERSON—ADMINISTRATOR CANNOT APPLY FOR PARTIAL DISTRIBUTION.—The superior court in probate has no jurisdiction to entertain a proceeding for partial distribution on the petition of an administrator. A decree so rendered is void, as the statute only authorizes the proceeding on the petition of an heir, devisee, or legatee.

EVIDENCE—DEPOSITION TO TAKE TESTIMONY OUT OF STATE—PERSON TO BE APPOINTED COMMISSIONER.—Under section 2024 of the Code of Civil Procedure, in the event of a disagreement between the parties to the action, the court may issue a commission to take the deposition of a witness out of the state, to any person whom the court deems a competent and proper person to act. The commissioner named need not be a commissioner of deeds appointed by the governor.

ID.—TESTIMONY MAY BE TAKEN IN SHORTHAND.—Under section 2006 of the Code of Civil Procedure, the testimony of the witness may be taken down in shorthand.

ID.—CERTIFICATE TO DEPOSITION—OATH ADMINISTERED BY COMMISSIONER.—Where the certificate to the return of the deposition shows

affirmatively that the person to whom the commission was issued ad-
ministered the oath to the witness as commissioner, the fact that he
also signed the certificate as a notary public is immaterial.

QUIETING TITLE—RATIFICATION OF DEED BY ATTORNEY IN FACT.—In an
action to quiet title, in which the defendant claimed under a deed
executed by the attorney in fact of the plaintiffs, in consideration of
the compromise of litigation, it is held, upon a review of the evi-
dence, that the deed, although not authorized by the expressed terms
of the power, was executed with the knowledge, consent, and approval
in writing of the plaintiffs, and had been ratified and confirmed by
them.

LAW OF CASE WHEN APPLIES.—The doctrine of the law of the case only
applies where the matters presented upon the second appeal are the
same as were presented and disposed of on the first appeal.

APPEAL from a judgment of the Superior Court of San
Joaquin County and from an order refusing a new trial.
W. B. Nutter, Judge.

The facts are stated in the opinion of the court.

William Craig, and J. F. Ramage, for Appellants.

Nicol & Orr, and S. M. Spurrier, for Respondent.

LORIGAN, J.—This action was brought to quiet the title
of plaintiffs to the northeast quarter of section 27, township
2 south, range 5 east, Mt. Diablo base and meridian, situated
in San Joaquin County. Judgment went for defendant and
plaintiffs appeal therefrom, and from an order denying their
motion for a new trial.

The plaintiffs deraign title to two thirds of the land in con-
troversy as heirs at law of one Joseph McKinney, deceased,
and as to the other third by virtue of a deed from one Dudley
Sebree, the only other heir at law.

Some of the conceded facts in the case are that Joseph
McKinney died in San Joaquin County in April, 1893, the
owner of land in that and other counties of the state, of the
then aggregate value of forty thousand dollars. He left a
will whereby he devised to one Olive A. Jennings the land
here in controversy, together with a large amount of other
real property, and made her his residuary legatee. This will
was duly admitted to probate. The plaintiffs and Sebree were
half brothers of McKinney, residing in Kentucky at the time
of the latter's death, and had not seen or heard from him

for upwards of thirty years.  They did not know of the death of McKinney, or that he had left any estate, until they were informed thereof by one J. H. Kyle, an attorney of Missouri, who visited them and imparted the information, and with whom they then entered into a contract employing him to represent their interests in the estate of McKinney, agreeing to pay him a contingent fee, based upon the amount of property recovered for them, of not less than twenty thousand dollars.  They also gave said Kyle a power of attorney which (omitting immaterial parts) declared that "we do by these presents make, constitute and appoint J. H. Kyle our true and lawful attorney for us and in our name, place and stead, to sell, convey, make, execute, acknowledge and deliver a good and sufficient warranty deed in our name or behalf, or any other such deed or conveyance as in his judgment he may deem fit or proper for such price or prices, and upon such terms and conditions as he may deem best, to any and all interest that we may have as half brothers and heirs at law of Joseph McKinney, deceased, of and to the following described land, subject to our approval, to wit:"  (Here follows a particular description of lands and a comprehensive clause applying to all lands and personal property of the estate.)  "Giving him full power and authority (to appear in all courts and institute any character of suit with reference to the legality of any writing purporting to be the act of McKinney, deceased), to submit any matter in dispute respecting the premises to arbitration, and otherwise and generally to say, do, transact, determine, accomplish and finish all matters and things whatsoever concerning the complete recovery or alienation of any interest we may have legally or equitably in said premises or any other land, as aforesaid.  Giving and granting unto our said attorney full power and authority (etc.) ; hereby ratifying and confirming all that our said attorney may or shall lawfully do or cause to be done by virtue hereof."

Having secured his contract of employment and the above power of attorney, Kyle came to California, and after attempting ineffectually to make a compromise or settlement in behalf of plaintiffs and Sebree, as heirs at law of McKinney, with the beneficiaries under his will, employed counsel and in the name of plaintiffs and Sebree commenced, in August, 1893,

a contest of the will of McKinney, which subsequently, in May, 1894, resulted in a judgment revoking and annulling the probate of McKinney's will. Olive A. Jennings, the principal beneficiary under the will and the one most actively engaged in the attempt to sustain it, in due time appealed to the supreme court from said judgment. She also moved for a new trial, had her bill of exceptions settled, allowed and filed, and from an order denying her motion also took an appeal to this court.

In addition to the above, the court found that prior to the time of filing such contest Dudley Sebree, one of the heirs at law, came to San Joaquin County and at all times thereafter during the pendency of said contest remained there; that subsequent to the taking of the appeal by Olive A. Jennings and during the pendency thereof in the supreme court, the attorneys representing plaintiffs and said Dudley Sebree were of the opinion that the judgment revoking and annulling the probate of the will appealed from would probably be reversed by the supreme court and that it would be to the best interests of plaintiffs and Sebree to compromise and settle said contest, and so advised Sebree and plaintiffs; that with this opinion in view they made overtures to said Olive A. Jennings and the other parties interested in the will as beneficiaries, and such negotiations were had between December, 1895 and June, 1896 that it was ultimately agreed that in consideration of the conveyance by plaintiffs and Dudley Sebree to said Olive A. Jennings of five hundred and sixty acres of land belonging to Joseph McKinney in his lifetime, including the tract involved in this controversy, and the payment by her of the sum of five hundred dollars, said Olive A. Jennings would cause her appeals to be dismissed; that the probate of said will should stand revoked and that a decree of the court declaring McKinney to have died intestate, and said plaintiffs and Dudley Sebree to be his sole heirs at law, should be made final; that prior to the effecting of such compromise the plaintiffs and Sebree were advised and informed of its terms and consented and agreed thereto; that thereafter in pursuance of such settlement and adjustment said Olive A. Jennings dismissed her appeals and a decree of the court, declaring that McKinney died intestate and plaintiffs and said Sebree to be his sole heirs, became final; that in pursuance

of such settlement the plaintiffs and Sebree through said
J. H. Kyle as their attorney in fact, made, on June 26, 1896,
a deed of conveyance to said Olive A. Jennings of said five
hundred and sixty acres of land, which was duly recorded;
that said five hundred and sixty acres· of land conveyed to
Olive A. Jennings were at the time of the conveyance thereof
of the value of about seven thousand dollars, and such convey-
ance was the only consideration for the dismissal of her ap-
peals and the extinguishment of any claim she had as resid-
uary legatee to the property of McKinney; that said settle-
ment and adjustment of the contest were in all respects fair;
that plaintiffs were informed of such settlement and adjust-
ment and of said conveyance by Kyle to said Jennings of
said five hundred and sixty acres of land, and they, together
with Dudley Sebree, consented to and approved such con-
veyance, and at all times thereafter and until the month of
July, 1900, plaintiffs and Dudley Sebree continued to recog-
nize, approve, and acquiesce in said conveyance of said land
to said Olive A. Jennings, and at all times since June, 1906,
have recognized and consented to said stipulation whereby the
said contest was settled by the dismissal of said appeal· of the
said Olive A. Jennings.

It was further found by the court that by the terms of the
compromise and settlement with Olive A. Jennings, of which
plaintiffs and Sebree were informed and advised and to which
they agreed and consented, a decree of distribution to Olive A.
Jennings of said five hundred and sixty acres of land was to
be obtained in the estate of McKinney by the attorneys for
plaintiffs and Sebree, the latter to petition for letters of ad-
ministration of the estate; that Sebree was appointed and
qualified as administrator, and on August 7, 1897, filed, as
administrator of the estate of McKinney, a petition for partial
distribution of the lands of the estate (there still remaining
considerable personal property) ; that the petition set forth
the terms of the compromise with Olive A. Jennings and asked
that there be distributed to her the five hundred and sixty
acres deeded to her under the compromise and other lands to
the heirs, and that said petition subsequently coming on for
hearing, a decree of partial distribution as to all the lands of
the estate was made, including a distribution to Olive A. Jen-
nings of the said five ·hundred and sixty acres.

The defendant, by mesne conveyance, subsequently acquired the land involved in this action, being a part of the five hundred and sixty acres conveyed to Olive A. Jennings under the compromise agreement and distributed to her under the decree of partial distribution in the McKinney estate.

On the merits of the appeal it is insisted by appellants: 1. That no title or interest belonging to them in the estate of McKinney could be conveyed by their agent Kyle except for a pecuniary consideration and an approval thereof by an instrument in writing executed by them and their co-heir, Sebree, hence the deed from Kyle to Jennings of the land involved being the result of a compromise of litigation and not a sale, was void; 2. That the decree of partial distribution under which the property was distributed to Jennings was void; 3. That the evidence was insufficient to sustain the finding of the court as to the approval of, consent to and ratification by plaintiffs and Sebree of the conveyance by Kyle to Jennings, and, 4. That even if these findings in this respect are sustained by the evidence, they did not amount to an approval, authorization, or ratification of the deed within the law.

It may be conceded without discussion that, looking exclusively to the provisions of the power of attorney, Kyle could not make a conveyance of any of the lands affected thereby except for a pecuniary consideration approved by plaintiffs and Sebree. The word "sale" usually imports a money consideration, and this was the effect of the holding of this court on an appeal in an action involving a consideration of this same power of attorney. (*Alcorn* v. *Buschke,* 133 Cal. 655, [66 Pac. 15].) It may equally be conceded that the decree of partial distribution was void because the court had no jurisdiction to entertain it on the petition of the administrator, the statute only authorizing it on the petition of an heir, devisee, or legatee. It was so decided as to this very proceeding on partial distribution. (*Alcorn* v. *Buschke,* 133 Cal. 655, [66 Pac. 15]; *Alcorn* v. *Brandeman,* 145 Cal. 62, [78 Pac. 343]; see, also, *In re Letellier,* 74 Cal. 311, [15 Pac. 847].)

These points being eliminated, we approach the question as to the sufficiency of the evidence to sustain the findings as to an approval, consent, and ratification by plaintiffs and Sebree of the conveyance from Kyle to Jennings and a consideration of the legal effect of such findings, if they are to stand.

CLVIII Cal.—26

In determining the sufficiency of the evidence it is necessary to consider the objections urged to the deposition of the witness Kyle, who acted as agent under the power of attorney in disposing of the land to Jennings. The findings under consideration are based mainly on the testimony of this witness taken by deposition, and to the admission of which deposition appellants objected. The deposition was taken in the state of Missouri on behalf of defendant upon a commission issued by the trial court after proper notice to the plaintiffs. No commissioner being agreed upon by the parties, the court appointed L. W. Good of Clinton, Missouri, as commissioner to examine said witness on oral interrogatories. The deposition was taken before the commissioner appointed, the examination being taken down by a shorthand reporter appointed by the commissioner for that purpose. The commissioner certified to the taking of the deposition both as notary public and commissioner and duly returned it to the county clerk of San Joaquin County. The order of court appointing L. W. Good commissioner did not appoint him as a notary public to take the deposition, but appointed him individually as commissioner to do so.

The objections urged by the appellant against the admission of the deposition in evidence were: 1. That the commission could not be issued to L. W. Good simply as an individual commissioner; 2. That the commissioner had no authority to appoint a stenographer to take the testimony of the witness; 3. That L. W. Good as notary public could not administer the oath to the witness Kyle or certify to the deposition as such notary. These objections were overruled by the court and the deposition admitted in evidence. As to the first objection, it was claimed thereunder that by section 2024 of the Code of Civil Procedure the court could only issue a commission to take the testimony of a witness outside the state to a notary public, judge, or justice of the peace or commissioner of deeds in a sister state appointed as such by the governor of the state, under section 811 of the Political Code. There is no merit in this claim. Section 2024 provides that the commission may be issued to "a person agreed upon by the parties," or, if there is no agreement, it may be issued by the court or judge "to any notary public, judge or justice of the peace or commissioner selected by the court or judge . . . issuing it." There is noth-

ing in the section requiring it to be issued to a commissioner of
deeds. It may be issued to any person whom the court deems a
competent and proper person to act. Counsel for appellants
doubtless make the claim that when the section refers to a com-
missioner it must mean a commissioner of deeds from the fact
that under the Practice Act, (Stats. 1851, c. 5), section 433, be-
fore the amendment thereto by the code in 1872, it was ex-
pressly provided that the commission, if not directed to a judge
or justice of the peace, must run to a commissioner appointed
by the governor of the state to take affidavits and depositions in
other states. In 1872, however, when section 2024 of the code
was enacted, that provision of the Practice Act was amended,
and ever since has stood, in the particular under discussion,
as it stands now, and was obviously amended so as to allow the
selection of any individual commissioner whom the court might
deem capable and competent to act. There is nothing in the
other objections. Section 2006 of the Code of Civil Procedure
expressly sanctions the taking of depositions in shorthand.
The certificate of L. W. Good showed affirmatively that he ad-
ministered the oath to the witness Kyle as commissioner, and
as far as his certificate to the deposition is signed by him as
notary public and also as commissioner, his signature as notary
public is immaterial—his signature as commissioner being
alone legally sufficient.

Now as to the finding of approval and consent of plaintiffs
and Sebree to the compromise and settlement of the litigation
in the estate of McKinney and to the conveyance of the land in
controversy to Jennings by their agent Kyle in conformity to
such compromise.

There can be no question but that, although the attorneys
for plaintiffs and Sebree had obtained a decree annulling the
will of McKinney, they were extremely doubtful of having it
sustained on appeal and that the overtures for a compromise
with Olive Jennings came from the attorneys for plaintiffs
after a conference with Kyle and Sebree, who were here in
California. Neither Olive Jennings nor her attorneys had
sought a compromise. They had rejected the efforts to do so
before the action to set aside the will was brought, and from
the decree doing so had perfected and were prosecuting her
appeals when a compromise was suggested. As to that com-
promise and the relation of plaintiffs and Sebree to it, it is

true that the finding is supported in the main by the testimony of Kyle. This however does not of itself detract from its force or sufficiency. No question is made of the credibility of Kyle as a witness. He was the representative of the plaintiffs and Sebree, engaged and acting for them to secure the estate, and it is only natural that the facts relative to the matter should come from him and from the plaintiffs and Sebree. They were matters of such a character as to be peculiarly within the knowledge of these parties.

The evidence shows that Sebree was in San Joaquin County when the negotiations for a compromise with Jennings were had; was fully informed of the negotiations therefor and actively participated in the consummation of the compromise to the extent even of furnishing three hundred dollars to bring it about; he was present at the execution of the deed by Kyle to Jennings, and, in his verified petition for partial distribution of the land, set forth the terms of the compromise with her and asked distribution to her of the five hundred and sixty acres in controversy. These facts are confirmed not only by the testimony of Kyle but by the testimony of other witnesses. From Kyle's testimony it appears that when the first overtures for a compromise were made by himself and the attorneys of record, with the consent and approval and active cooperation of Sebree, he wrote to the plaintiffs in Kentucky of the fear of the attorneys representing them as to the result of the appeals by Jennings, and the efforts which he and the attorneys and Sebree were then making to effect a compromise with Jennings and the terms offered, which involved a conveyance to her of part of the property of the estate, in consideration of the dismissal of her appeals. This initial effort at a compromise was without result. About a year subsequent the effort was again renewed on behalf of plaintiffs and Sebree by Kyle and the attorneys and Kyle informed plaintiffs of the renewed effort. In reply to these letters the plaintiffs wrote Kyle that they were satisfied and approved of the action he was taking to effect a compromise. When the compromise was actually effected upon the terms offered to Jennings, and of which Kyle had written the plaintiffs, and of which they approved, the latter again wrote them to that effect—that he had consummated the compromise by conveying to Jennings five hundred and sixty acres of land in consideration of her

dismissing her appeal, which she had done. In response to this letter of advice on the subject, plaintiffs wrote him that they were satisfied with his action and were grateful to him for his services in the matter. This evidence fully sustains the findings made by the court that the conveyance to Jennings was with the knowledge, consent, and approval of the plaintiffs. It is true that Kyle could produce no letters received from the plaintiffs on the subject, but this was explained by him to be impossible on account of their destruction in the burning of his residence in Missouri. It is also true that the plaintiffs denied the reception of any letters from Kyle on the subject, or their writing any approval or consent to the conveyance or authorizing the compromise, and denied any knowledge of the conveyance to Jennings until after it was made.

While counsel for appellants devote much time to a discussion of the evidence as addressed to this finding, particular consideration of it would not be at all profitable aside from the general way in which we have referred to it. Aside from this immediate transaction, there is no question but that Kyle acted fairly towards the plaintiffs and Sebree, and fairly expended his efforts in an endeavor to secure for them the estate of their deceased half brother. It is in evidence that he did write to them on matters of the estate, and that Sebree, who was on the ground, was in constant communication with his brothers, between whom the most intimate relations existed. There was no reason why either Kyle or Sebree should withhold information as to a proposed settlement at the time it was being negotiated, or of its terms when it had been effected, as they were all acting in what they deemed was the best interests of the plaintiffs and Sebree. There is no reason why the trial court should assume that the testimony of Kyle was untrue; that he had surreptitiously made a compromise and conveyed the property of plaintiffs and Sebree to effect it. There was no occasion for clandestine action on his part. Sebree was on the ground, and, as one of the heirs and principals in the power of attorney to Kyle, was participating in the efforts to compromise with Jennings on the basis of a conveyance to her, and there was no reason why Kyle, under these circumstances, should withhold information from or neglect to inform the other heirs of his efforts with a view to obtaining their consent and approval with Sebree's to a conveyance for that purpose.

On the contrary, it was only natural he should do so, particularly as his power of attorney did not in terms authorize him to convey the land for purposes of a compromise, or to make any conveyance at all except with the approval of the plaintiffs and Sebree. As far as the testimony of plaintiffs is concerned, it appears that they learned of some compromise having been made right after it was actually effected in June, 1896. Who informed them of it does not appear, although the only persons communicating with them were Kyle and Sebree. After acquiring information of it, it appears that they made no protest or objection, either to Kyle or any one concerned or interested in the compromise, or took any action with reference to it, until this suit to quiet title to the property conveyed under the compromise was instituted in 1900. The court had a right to conclude that this long acquiescence by plaintiffs in the compromise after knowledge of it, proceeded from the fact, testified to by Kyle, that preliminary to the conveyance by him to Olive Jennings he had advised plaintiffs of the negotiations for a compromise of the litigation on the basis of such conveyance to her, and that the plaintiffs had consented and approved of it, and that the conveyance was made for that purpose and with their consent and approval. But, as we say, there can be no good reason for discussing the evidence in detail, or indulging in deductions therefrom as to the finding of consent and approval by plaintiffs of the conveyance to Jennings by Kyle in consummation of the compromise, because it can only result in accentuating the fact that there was a radical conflict in it as to the essential facts necessary to support the finding in that respect, and under such circumstances it is a familiar rule of law that this court cannot disturb a finding when based upon conflicting evidence.

As it appears that the finding is supported by the evidence, there can be no doubt about the law applicable to the facts as found. As far as the plaintiffs are concerned, considering their claim (aside from the interest derived under the conveyance from Sebree) it is disposed of by the fact that they expressly and in writing consented to and approved of the conveyance of this land to Jennings by Kyle as their agent for the purpose of effecting a compromise of the litigation in the McKinney estate. While respondents, in addition to the claim of express consent and approval of the conveyance to

Jennings, invoke also the doctrine of equitable estoppel, we perceive no reason for devoting any time to it. If the conveyance had been made by Kyle of his own volition, and without any authority from or approval by the plaintiffs, a different question might arise and a consideration of the doctrine of equitable estoppel become pertinent. The validity of the conveyance can be fully sustained, however, under the finding that it was made by the express consent and approval of the plaintiffs. Counsel for appellants have not suggested any reason why this is not true. In fact, no valid reason can be given. The power of attorney was for the benefit of plaintiffs and Sebree and while it empowered Kyle to convey the lands of the McKinney estate, any such conveyance was in terms subject to their approval. We are not here dealing with a contract between the plaintiffs and Sebree and Kyle, but with an instrument conferring a power of sale upon the latter, to be exercised for the benefit of the former, and the exercise of which, by the terms of the instrument, was within their control. While the instrument authorized Kyle to sell and convey any of the property in which they were interested, for such prices and upon such terms and conditions as he might deem best, such sales or conveyances were to be subject to their approval. Under these circumstances they could authorize a conveyance on any terms or for any purpose they might elect, and for any consideration they deemed satisfactory to themselves. However much Kyle might be constrained by its terms as to any conveyance he might make in the exercise of his powers, undoubtedly the plaintiffs could consent or authorize a conveyance under it by him for any purpose or consideration satisfactory to them. They authorized him to convey the land to Jennings in consideration of the abandonment of her appeals and consequent acquisition of the estate of McKinney by them free from any claim on her part. There is no question but what Jennings parted with substantial rights and that a valuable consideration passed from her to the plaintiffs for the conveyance to her of this land. Plaintiffs had the power and authority to direct their agent Kyle to make the conveyance for the purpose of effecting a compromise, and we can perceive no reason why any question can be made about the legal sufficiency of their act as sustaining the validity of the conveyance as directed by them. The only question in the case

is whether they had originally consented to and approved of a conveyance to be made by their agent Kyle and actually made by him with such consent and approval, and the court having found that they did this would seem to leave no further room for dispute.

As far as the claim of plaintiffs to one third of the property in question is based on the conveyance from Sebree to them, but little need be said. There cannot be the slightest question but that Sebree knew all about the negotiations which resulted in the compromise and conveyance. He actively participated in bringing the compromise about; contributed from his own funds to a settlement with other claimants in order to effect it; and was present when the affair was concluded and the dismissal of the appeal obtained from Jennings and the deed to her made by Kyle. The evidence may not show that Sebree expressly consented to or authorized a conveyance, but the circumstances detailed warranted the court in finding that the deed was made with his consent and approval. Aside from this, it further appears that in pursuance of one of the terms of the compromise agreement, Sebree, as administrator of the estate, filed a petition for partial distribution in which he asked distribution to Jennings of the property embraced in the deed. The petition set forth, among other things, that Sebree and plaintiffs were the sole heirs of McKinney and the fact that a compromise of the litigation over the estate between them and Jennings had been effected under an agreement whereby there was to be distributed to the latter, of the property of the estate of McKinney to which they would otherwise be entitled, those lands set forth in the petition; and that she was entitled to this distribution, agreeable to their compromise, as the consideration for having dismissed her appeal from the judgment revoking the will of McKinney. After notice and a hearing a distribution to Jennings was made as prayed for. Conceding that said decree was void, at least as to plaintiffs, as was held in *Alcorn* v. *Buschke,* 133 Cal. 655, [66 Pac. 15], and *Alcorn* v. *Brandeman,* 145 Cal. 62, [78 Pac. 343], still, as to Sebree, who signed and verified it and who intended it to be effective, it was a clear recognition and approval of the compromise agreement and the conveyance to Jennings made under it, and operated as a ratification of the act of his agent Kyle in making the deed, if there could

be any reasonable ground for doubt as to the full consent of Sebree to its execution by Kyle at the time it was made.

The findings of the court that the proposed compromise and settlement between plaintiffs, Sebree, and Jennings of the litigation between them, which included the execution of the conveyance in question by their agent, Kyle, was had with the knowledge, consent, and approval of the plaintiffs and Sebree, previously had and given, and was actually consummated with such knowledge, consent, and approval being sustained by the evidence, the court was clearly right in holding that the deed to Jennings made in pursuance thereof was unimpeachable, and as to her successor, the respondent here, was equally good and valid.

In concluding this matter it may be said that as far as the claim of appellants is that the decisions in *Alcorn* v. *Buschke,* 133 Cal. 655, [66 Pac. 15], and *Alcorn* v. *Brandeman,* 145 Cal. 62, [78 Pac. 343], are the law of the case on this appeal, they are clearly in error. In the cases relied on the appeals were from judgments entered after demurrers to the complaints were sustained. The only questions passed on were as to the authority given Kyle under the power of attorney, because it was alleged that the deed to Jennings was made without consideration and without the knowledge or consent of plaintiffs or Sebree, and without the approval of either of them; also the validity of the decree of partial distribution. The doctrine of "the law of the case" only applies where the matters presented upon the second appeal are the same as were presented and disposed of on the first appeal. The answer of the defendant to the complaint after reversal of the judgment in *Alcorn* v. *Brandeman,* 145 Cal. 62, [78 Pac. 343], denied that the deed to Jennings was without the knowledge or consent of plaintiffs or Sebree or without consideration; affirmatively alleged both consent and approval of plaintiffs and Sebree to the conveyance and that it was supported by a valuable consideration. Under these circumstances it is clear that the rule of "the law of the case" has no application.

The judgment and order appealed from are affirmed.

Henshaw, J., and Melvin, J., concurred.

Hearing in Bank denied.