[No. E015842. Fourth Dist., Div. Two. Jan. 16, 1997.]

Estate of AMELIA DAILY HUSTON, Deceased.
JOHN E. AMBERG, Petitioner and Respondent, v.
MARY DEONNE GREENE, Objector and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

David B. Shea and Harry R. Hibbs for Objector and Appellant.

Schlecht, Shevlin & Shoenberger and John C. Shevlin for Petitioner and Respondent.

**OPINION**

**WARD, J.**—Mary Deonne Greene, the niece of decedent Amelia Daily Huston and a residuary beneficiary under decedent's will, appeals from an

order confirming the gift of a $90,000 annuity from decedent to her attorney in fact and financial representative, John. E. Amberg. Greene contends the judgment should be reversed because (1) the evidence does not support the judgment; (2) the gift was void; (3) the gift was never completed; and (4) the court failed to protect the decedent's estate. We conclude the gift was void as having been outside Amberg's authority under his power of attorney. We therefore reverse.

## Factual and Procedural Background[1]

Decedent died at the age of 90 in January 1993, and on March 15, 1993, the court admitted her will to probate and appointed Amberg as executor thereof.

In May 1994, Amberg, acting in his personal capacity, filed a petition for determination of ownership and for order of conveyance and transfer of assets of estate. The petition sought transfer of a $90,000 annuity to himself. Greene, Wendell P. Daily II, and Linda Lou Abramson, the three children of decedent's deceased brother Roscoe E. Daily, all residuary beneficiaries under decedent's will, objected to Amberg's petition. Paul Daily, decedent's brother, and Martha Galloway, decedent's niece, affirmatively consented to the transfer; another niece, Dorothy Nobel, did not respond. Paul Daily, Galloway, and Nobel were also residuary beneficiaries under decedent's will.

A hearing on the petition was held in November 1994. At the hearing, Amberg testified that he and his wife had been neighbors and social friends of decedent and her husband since 1975. Decedent's husband died in 1983; before his death, he asked the Ambergs to look after decedent. In 1984, decedent asked Amberg to take charge of her financial affairs. In 1984 and 1985, decedent signed durable powers of attorney prepared by her attorney, Robert Rose, designating Amberg as her attorney in fact. Amberg managed decedent's financial affairs until her death. Amberg was first paid $50 an hour, and later, $60 an hour, for his services to decedent.

Argia Montgomery, decedent's long-time friend, assisted decedent in her final years with errands, supervised her household and nursing staff, and acted as her companion. Decedent nominated Montgomery as her agent in a

---

[1]The evidence is set forth in this section consistent with our substantial evidence review of the trial court's finding: "The evidence is viewed in the light most favorable to respondent who is entitled to the benefit of every reasonable presumption. We accept as true all evidence favorable to respondent and discard contrary evidence as unaccepted by the trier of fact. [Citation.]" (*In re Marriage of Aninger* (1990) 220 Cal.App.3d 230, 238 [269 Cal.Rptr. 388].)

Additional facts are set forth in the discussion of the issues to which they pertain.

durable power of attorney for health care. Decedent paid Montgomery $500 per month for her services.

In March 1984, decedent executed a will Rose prepared for her. Under the will, decedent bequeathed her condominium and its furnishings to Montgomery. The residuary assets of the estate were to be distributed by formula to other beneficiaries. In October 1985, decedent executed a codicil to her will, also prepared by Rose, adding specific bequests in favor of Montgomery and Amberg. In August 1986, decedent executed a second codicil to her will, again prepared by Rose, altering its provisions concerning the disposition of her condominium and its contents in the event Montgomery predeceased her.

Martha Galloway, decedent's niece and a residuary beneficiary under the will, testified she visited decedent in 1987. Decedent disclosed that she was leaving her condominium to Montgomery and stated she was concerned about what she should do to treat Montgomery and Amberg equitably, because Montgomery and Amberg were the ones who took care of her. Decedent told Galloway she wanted Montgomery and Amberg "to share in her assets equally."

In 1988, decedent became bedridden and seldom left her home. She ceased accepting visits from most of her friends and acquaintances, but kept in contact with them by correspondence and telephone. However, she continued to receive regular visits from Montgomery and Amberg.

Amberg testified that in late 1989, Amberg visited decedent to review her finances. He told her she had a $100,000 certificate of deposit maturing soon. Decedent told Amberg she wished to purchase an annuity with the proceeds of the certificate of deposit and give it to him. She stated she was giving her condominium, which she believed was worth $90,000 to $100,000, to Montgomery, and she wished Montgomery and Amberg to share alike in the assets of her estate. Amberg told her she should retain the right to the payments made on the annuity during her lifetime, because she would need the income to pay her expenses, and the annuity should pass to him only upon her death. Decedent agreed with this proposal. Amberg further suggested that if he predeceased her, the annuity should pass as a portion of her estate upon her death. Decedent agreed. Decedent and Amberg agreed that $10,000 from the maturing certificate of deposit should be deposited in decedent's checking account to pay her ongoing expenses, and $90,000 would be invested in the annuity.

Amberg testified he visited the bank where decedent maintained her certificate of deposit; he told the branch manager he wished to purchase a

$90,000 annuity; that the monthly payments on the annuity were to be payable to decedent during her lifetime; that upon her death, the annuity should be payable to him; and that if he predeceased her, the annuity should pass to her estate. On his suggestion, the branch manager telephoned decedent and confirmed her wish to purchase the annuity in the form described by Amberg.

Amberg testified the branch manager completed the application form for the purchase of the annuity, designating decedent as the owner of the annuity, Amberg as the annuitant, and decedent's estate as the beneficiary. Amberg signed the application form as prepared by the branch manager. When Amberg received the annuity, he informed decedent of his receipt. The first one or two monthly checks issued under the annuity were made payable to Amberg. He endorsed the checks and deposited them in decedent's bank account. He instructed the company that had issued the annuity to issue future annuity checks to decedent. Thereafter, the checks were issued to decedent or her estate. Amberg deposited all the checks during decedent's lifetime into her checking account.

Amberg's wife testified Amberg mentioned the transaction to her, and she then telephoned decedent to thank her for her generosity. Decedent replied that she was happy to be able to do something for Amberg that she had wanted to do for a long time.

Decedent was mentally alert until her death in 1993. She knew the persons with whom she was dealing and was able to carry on intelligent conversations and make rational decisions concerning her personal affairs.

Amberg testified that after decedent's death, he learned the provisions of the annuity did not conform to decedent's wishes for its disposition following her death. The annuity provided that Amberg was entitled to distribution of the monthly payments during its term, but the principal value would pass to the residuary beneficiaries of the estate upon the maturity of the annuity. Thus, Amberg filed and served a notice of proposed action on the residuary beneficiaries, seeking their consent to the transfer of any interest of the estate in the annuity to himself.

On January 12, 1995, the trial court entered an order holding that decedent's estate held any interest it might have in the annuity as "[t]rustee of a resulting trust for benefit of [Amberg]." The order was supported by detailed findings of fact. Greene has appealed from that order.

DISCUSSION

I. *The Gift Was Void Because It Was Outside the Scope of Amberg's Authority Under the Power of Attorney*

■ Greene contends the gift was void, because under the express terms of the power of attorney, Amberg was forbidden to make a gift to himself. Amberg's power of attorney provided, "you shall not make gifts to yourself." In addition, Probate Code section 4264 states, "A power of attorney may not be construed to grant authority to an attorney-in-fact to perform any of the following acts unless expressly authorized in the power of attorney:

". . . . . . . . . . . . . . . . . . . .

"(c) Make or revoke a gift of the principal's property in trust or otherwise."

"A power of attorney conferring authority to sell, exchange, transfer or convey real property for the benefit of the principal does not authorize a conveyance as a gift or without a substantial consideration (*Alcorn* v. *Gieseke* [(1910)] 158 Cal. 396, 401 [111 P. 98]; *Randall* v. *Duff* [(1988)] 79 Cal. 115, 125 [19 P. 532, 21 P. 610, 3 L.R.A. 754]; *Mott* v. *Smith* [(1860)] 16 Cal. 533, 557; *Bertelsen* v. *Bertelson* [(1942)] 49 Cal.App.2d 479, 484 [122 P.2d 130]; *Bank of America* v. *Perry* [(1940)] 41 Cal.App.2d 133, 136 [106 P.2d 53]); and a conveyance without the scope of the power conferred is void. (*Alcorn* v. *Gieseke, supra,* 158 Cal. 396, 401; *Alcorn* v. *Buschke* [(1901)] 133 Cal. 655, 657 [66 P. 15]; *Randall* v. *Duff, supra,* 79 Cal. 115, 125; *Dupont* v. *Wertheman* [(1858)] 10 Cal. 354, 367.)" (*Shields* v. *Shields* (1962) 200 Cal.App.2d 99, 101 [19 Cal.Rptr. 129].)

Here, the trial court found that Amberg had purchased the annuity pursuant to decedent's express instructions, and that a representative of the bank where the annuity was purchased discussed the terms of the annuity with decedent and confirmed her intention that the annuity would pass to Amberg upon her death, unless he predeceased her. Amberg testified that before purchasing the annuity, he discussed the transaction with decedent, and she agreed to the terms of the transaction. At the bank, he told the bank manager, " 'Why don't you call Mrs. Huston and talk with her and double check it,' I said, 'simply because my name is appearing on this document personally and everything I've done has been under the powers to me under the durable

power of attorney.'" The bank manager then telephoned decedent and discussed the annuity with her. The trial court, as sole judge of the credibility of witnesses, accepted Amberg's testimony as true. Moreover, Amberg's testimony was corroborated by that of Martha Galloway, decedent's niece, who testified that in a conversation with decedent, decedent expressed her desire to treat Amberg "equally," "fairly," and "equitably" with Montgomery, because Amberg and Montgomery were the ones who took care of decedent. In addition, Mrs. Amberg testified that after Amberg told her about the transaction, she telephoned decedent and thanked her for her generosity, and decedent replied that she was happy to be able to do something for Amberg, that she had wanted to do for a long time. This substantial evidence in the record supports the trial court's findings that the annuity was purchased with the decedent's knowledge, consent, and approval.

A question therefore arises whether decedent's oral assent to the gift served to ratify the transaction and make the gift valid. We conclude that it did not. "A power of attorney is a written authorization to an agent to perform specified acts on behalf of the principal. [Citation.] The rights and liabilities created by the exercise of such authority are centered in the law of agency. [Citation.]" (*People* v. *Ranger Ins. Co.* (1994) 31 Cal.App.4th 13, 21 [36 Cal.Rptr.2d 807].) Ratification of an agent's act "can be made only in the manner that would have been necessary to confer an original authority for the act ratified, . . ." (Civ. Code, § 2310.) Because a power of attorney must be in writing, any act performed by the agent acting under the power of attorney must therefore be ratified in writing to be valid.

Even though, from the evidence at trial, it is apparent decedent in fact wished to make a gift to Amberg, nonetheless, she failed to comply with the formalities necessary to do so, such as by modifying Amberg's authority under the power of attorney or by executing another codicil to her will.[2] We therefore conclude the gift was void. Greene's additional contentions concerning the validity of the gift are thus moot and require no further discussion.

II.  *The Trial Court's Duty to Replace Executor*\*

. . . . . . . . . . . . . . . . . . . . . . . . . .

---

[2]We hasten to add that the record does not reflect any dishonesty or bad faith on the part of Amberg. He simply failed to conform to the rules imposed upon a person acting in the fiduciary capacity in which he was placed.

\*See footnote, *ante*, page 1721.

## DISPOSITION

The judgment is reversed. Each party shall bear its own costs on appeal.

Hollenhorst, Acting P. J., and McKinster, J., concurred.

A petition for a rehearing was denied February 10, 1997, and appellant's petition for review by the Supreme Court was denied April 23, 1997. Werdegar, J., was of the opinion that the petition should be granted.